PEOPLE v ALBERS

Docket No. 236882. Submitted July 10, 2003, at Lansing. Decided September 23, 2003, at 9:20 A.M. Leave to appeal sought.

Karen S. Albers was convicted by a jury in the Gratiot Circuit Court, Randy L. Tahvonen, J., of involuntary manslaughter and was sentenced to four to fifteen years of imprisonment after her six-year-old son, while playing with a cigarette lighter, started a fire in their apartment complex that resulted in the death of a neighbor. The defendant appealed.

The Court of Appeals *held*:

1. There was sufficient evidence to support the defendant's conviction. To prove gross negligence amounting to involuntary manslaughter, the prosecution had to establish the defendant's knowledge of a situation requiring the use of ordinary care and diligence to avert injury to another, her ability to avoid resulting harm by ordinary care and diligence in the use of the means at hand, and her failure to use care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another. The prosecution established that the defendant's conduct was the cause in fact of the fatal accident with evidence that she knew of the danger posed by leaving lighters within reach of her children who had a propensity for setting fires, failed to heed warnings to lock up incendiary devices, kept a lighter in a place that was easily accessible to her children, failed to exercise due diligence to prevent her son from having access to the lighter, and failed to properly supervise her son after he had access to the lighter.

2. The prosecution offered two alternative theories of guilt: the defendant was grossly negligent in failing to exercise ordinary care to avert dangers posed by her son, or the defendant was grossly negligent in failing to perform a legal duty owed to the victim under the defendant's lease agreement. Relief is not warranted by any error the trial court may have committed in failing to instruct the jury that it must unanimously agree on the second theory in order to convict as opposed to being able to convict on the basis of some jurors considering the defendant guilty under the first theory while others considering her guilty under the second theory. The

jury could only find the defendant guilty under the second theory by making findings of fact that would also mean that she was guilty under the first theory. In order to convict under either theory, the jury would have had to find that the defendant's son obtained the lighter that the defendant left unsecured in the apartment.

3. Evidence of previous fires started by the defendant's children was properly admitted. The evidence was relevant to the defendant's knowledge of a potential risk of harm, and was not precluded by MRE 404 as evidence of the defendant's propensity to commit the crime or by MRE 403 as unfairly prejudicial evidence.

4. Error committed by the trial court in admitting into evidence a statement by the defendant that she "didn't care how the other two boys were doing, as long as her [sic] and her kids were all right" does not warrant reversal or remand for a new trial. Notwithstanding that the error was prejudicial, the error was not outcome-determinative in light of the great weight of the untainted evidence that supported the jury's verdict of guilt.

5. The defendant was not denied her due process right to a fair trial when the trial court admitted into evidence a recording of the 911 call made by the victim's mother during the fire. The evidence was highly relevant to the cause of the victim's death and was not unfairly prejudicial.

6. The trial court did not err at sentencing by scoring twenty-five points for offense variable 3 for life-threatening or permanent incapacitating injury to a victim other than the homicide victim. MCL 777.33. "Victim," for purposes of OV 3, includes any person harmed by the criminal action of the charged defendant and is not limited to the victim of the charged offense.

Affirmed.

1. Homicide — Involuntary Manslaughter — Gross Negligence.

Gross negligence amounting to involuntary manslaughter is established with proof of knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another, of ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand, and of the failure to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another (MCL 750.321).

2. Sentences — Sentencing Guidelines — Offense Variable 3 — Physical Injury to Victim.

Offense variable 3, physical injury to a victim, may be scored for physical injury to any person harmed by the defendant's criminal actions (MCL 777.33).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Keith J. Kushion*, Prosecuting Attorney, and *William E. Molner*, Assistant Attorney General, for the people.

State Appellate Defender (by *Gail Rodwan*) for the defendant on appeal.

Before: NEFF, P.J., and FORT HOOD and BORRELLO, JJ.

BORRELLO, J. Defendant Karen S. Albers appeals as of right from a conviction of involuntary manslaughter, MCL 750.321, following a jury trial. Defendant was sentenced to four to fifteen years of imprisonment, with credit for forty days served. We affirm.

I

Defendant was convicted of involuntary manslaughter on the basis of an incident in which her six-year-old son, Brent, obtained a lighter and started a fire in their apartment complex, resulting in the death of a twenty-two-month old child, Christopher Byers. The victim resided in another apartment within the same complex occupied by the defendant and her son.

Brent testified that he obtained a cigarette lighter from underneath a sofa cushion on which the defendant was sleeping. He further testified that he jumped onto a kitchen counter to obtain a candle that had been placed on top of the refrigerator, presumably out of his reach. He then took the candle and lighter to the bedroom of the defendant and lit the candle. Shortly thereafter, the bedroom curtains caught fire, and the fire eventually spread throughout the apartment complex.

Christopher and his parents lived in the apartment directly above the defendant's apartment. On the night of the fire, Melissa Byers, the victim's mother, awoke to find smoke in her apartment and the hallway too hot and smoke-filled to attempt an exit. Ms. Byers took her son Christopher and another child, Jeremiah, who was a guest in the apartment, to the bathroom along with a telephone to call 911. In her effort to save the children, Ms. Byers lost consciousness and was rescued by the firefighters who arrived on the scene. Christopher was taken to the hospital where his parents were informed that he had sustained permanent brain damage. Christopher died soon after the decision was made to remove him from life support. The coroner ruled the cause of death to be from "smoke inhalation and a lack of oxygen to his brain."

II

On appeal, defendant argues that she was denied due process because her conviction was based on legally insufficient evidence, and because the court failed to instruct the jury that it must agree on one of the prosecution's two alternative theories of guilt. The prosecution set forth two alternative theories of guilt: (1) that defendant was grossly negligent in failing to exercise ordinary care to avert dangers posed by her child, CJI2d 16.10, or (2) that defendant was grossly negligent in failing to perform a legal duty to Christopher under her lease agreement. CJI2d 16.13. However, defendant failed to object at trial to the prosecutor's alternative theories of guilt and also failed to object to the instructions given to the jury by the trial judge.

III

Regarding the issue of insufficient evidence to support a conviction, this Court views the evidence in the light most favorable to the prosecution to decide whether any rational fact-finder could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Hunter*, 466 Mich 1, 6; 643 NW2d 218 (2002). To prove gross negligence amounting to involuntary manslaughter, the prosecution must establish: (1) defendant's knowledge of a situation requiring the use of ordinary care and diligence to avert injury to another, (2) her ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand, and (3) her failure to use care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another. *People v McCoy*, 223 Mich App 500, 503; 566 NW2d 667 (1997); see also, CJI2d 16.10

The evidence that defendant had knowledge of a situation requiring the use of ordinary care and diligence to avert the threatened injury to another was overwhelming. Brent testified that he had burnt the carpet many times in a prior apartment, set a bed ablaze while one of his stepfathers was sleeping on it, and he had burnt numerous holes in the carpeting of a motel in which his family was temporarily staying. Testimony at trial clearly demonstrated that defendant was aware of all of these incidences and was repeatedly warned to keep all flammable materials and incendiary devices (including cigarette lighters) out of Brent's reach.

Defendant had been warned on several occasions that she should lock up all lighters to prevent Brent from having access to them. Defendant stated that she was "not going to live like that," and "[her children] know better than to play with matches or lighters." This tragedy demonstrated that the children clearly did not know not to play with matches or lighters. Locking up the lighters and matches was a means by which defendant could have used ordinary care and diligence to prevent Brent from obtaining a lighter and thereby starting yet another fire. The evidence on this issue was, again, overwhelming. Not only did the defendant have trouble with Brent starting fires, the evidence demonstrated that her other children were prone to acts of arson as well. Against the backdrop of the clear danger that her children's fire-starting proclivities posed, the defendant's repeated refusal to take necessary precautionary measures demonstrated her complete failure to acknowledge the threat posed and to exercise any level of diligence to prevent the behavior her children had demonstrated on numerous occasions.

Defendant's conduct in leaving the lighter in a location easily accessible to Brent rather than locking it up was a direct cause of Brent being able to use the lighter to start the fire. Again, the defendant had been advised to keep these materials locked up at all times. She refused. As a direct result of her refusal to undertake a very reasonable step in averting danger, Brent was able to grab the lighter from underneath a sofa cushion and light a candle that then lit the curtains on fire, resulting in the death of a baby. In *People v Tims*, 449 Mich 83, 95; 534 NW2d 675 (1995), the Michigan Supreme Court held that, "In order to con-

vict a defendant of a criminal negligence offense, the prosecutor must prove beyond a reasonable doubt that the defendant's conduct was a factual cause of the fatal accident." In this case, the defendant (1) knew of the danger posed by leaving lighters within reach of her children, (2) failed to heed any warnings to lock up the lighters and matches, (3) kept the lighter in a place that was easily accessible to her children, (4) failed to exercise due diligence to prevent Brent from having access to the lighter, and (5) failed to properly supervise Brent after he had access to the lighter. All of these factors together constitute the cause in fact of the fatal accident. Therefore, there was more than sufficient evidence to support defendant's involuntary manslaughter conviction.

IV

Defendant's argument regarding the trial court's failure to require jury unanimity on one of the two alternative theories of guilt advanced by the prosecution is not properly presented for review because it is not within the scope of the questions presented. See, e.g., *People v Miller*, 238 Mich App 168, 172; 604 NW2d 781 (1999) (refusing to consider argument outside scope of statement of questions presented). In particular, defendant's statement of the question presented correlating with the present issue refers only to a sufficiency of the evidence claim, not to any claim of error regarding jury instructions failing to require a unanimous verdict. Thus, this Court would be justified in declining to consider this argument on this basis alone.

However, even if this Court were to consider the merits of this issue, we would conclude that defen-

dant is not entitled to relief under *People v Carines*, 460 Mich 750; 597 NW2d 130 (1999), which enunciated the standard of review for unpreserved error. In the relevant jury instructions, the trial court first said that defendant was charged with involuntary manslaughter committed in one or both of two ways: (1) "by doing a grossly negligent act causing death" or (2) "by gross negligence in failing to perform a legal duty." With regard to the first theory, the trial court instructed the jury:

> To prove involuntary manslaughter by doing a grossly negligent act causing death, the prosecutor must prove each of the following three elements beyond a reasonable doubt.
>
> First, that the defendant caused the death of Christopher Byers; that is, that Christopher Byers died as a result of the defendant keeping an accessible cigarette lighter in her apartment with knowledge of her son's propensity to play with and start fires.
>
> Second element that has to be proved beyond a reasonable doubt, in doing the act that caused Christopher Byers' death, the defendant acted in a grossly negligent manner.
>
> Third that the crime occurred in February, 2001, in Gratiot County, Michigan.

As discussed above, there was sufficient evidence to support defendant's conviction of involuntary manslaughter under this theory.

The trial court further instructed the jury with regard to the second theory:

> To prove involuntary manslaughter by gross negligence in failing to perform a legal duty causing death, the prosecutor must prove each of the following elements beyond a reasonable doubt, five in number.
>
> First, that the defendant, Ms. Albers, had a legal duty to Christopher Byers. The legal duty charged here is alleged to be created in the defendant Ms. Albers' lease with the

Ithaca Apartments, as described in the arguments of counsel.

Second, that the defendant knew of the facts that gave rise to that legal duty.

Third, that the defendant willfully neglected or refused to perform that duty, and her failure to perform it was grossly negligent to human life.

Fourth, that the death of Christopher Byers was directly caused by the defendant's failure to perform this duty; that is, that Christopher Byers died as a result of the defendant's failure to properly secure the lighter Brent West allegedly used to start the fire.

And, fifth, once again that the crime occurred in February, 2001, in Gratiot County, Michigan, to make certain we're in the right court.

Thus, the trial court instructed the jury that its verdict must be unanimous. However, defendant is correct that the trial court never instructed the jury that it must unanimously agree on one of the prosecution's theories in order to convict as opposed to being able to convict defendant on the basis of some jurors considering her guilty under the first theory while others considering her guilty under the second theory.

Defendant's argument depends on attacking the second theory as legally unsupported on the ground that defendant owed no legal duty to Christopher. However, assuming this is true, we conclude that defendant is not entitled to relief under the *Carines* standard because the jury could only find her guilty under the second theory by making findings of fact that would also mean that she was guilty under the first theory, which was not dependent on any breach of duty to Christopher under the lease agreement.

Critically, if a juror found guilt under the second theory, the juror would also have found that Christopher died as a result of defendant's failure to properly secure the lighter that Brent used to start the fire. Under the circumstances of this case, there would be no rational difference between such a finding and the finding required for conviction under the first theory that Christopher died as a result of defendant keeping an accessible lighter in her apartment with knowledge of her son's propensity to play with lighters and start fires. In order to convict under either theory, the jury would have had to find that Brent obtained a lighter that defendant left unsecured in the apartment.[1] In convicting defendant, it would have had to have effectively made findings of fact that meant defendant was guilty under the first theory even if some or all jurors based their votes to convict on the second theory.

In sum, there was sufficient evidence to support defendant's conviction of involuntary manslaughter. Any error by the trial court in instructing the jury on the prosecution's second theory of guilt regarding breach of a contractual duty does not warrant relief under the *Carines* standard for unpreserved error. Defendant is not entitled to relief based on this issue.

V

The prosecution argued that evidence of previous fires started by defendant's children was relevant to

---

[1] In this regard, it is unimportant that the instructions for the first theory referred to "her [defendant's] son," while the instructions on the second theory expressly named Brent because there was no evidence that defendant's other sons caused the fire at issue that resulted in Christopher's death. Thus, in order to rationally convict defendant under either theory, the jury would have had to find that Brent started the fire.

defendant's knowledge of a potential risk of harm and also evidence of disregarding or ignoring that risk. We agree. This evidence was a necessary component of the prosecution's case and was highly relevant. We find no evidence of prejudice in the admission of these incidents. We therefore reject defendant's claim that this evidence was irrelevant or prejudicial. Additionally, we find without merit defendant's contention that admission of this evidence was precluded by MRE 404. Quite clearly, the prosecutor did not use the evidence at issue to prove the character of a person in order to show action in conformity therewith. Rather, the prosecutor used this evidence to prove defendant's knowledge of her son's proclivity to start fires. Accordingly, the evidence at issue was not precluded by MRE 404 (b)(1) because it was probative of something other than defendant's propensity to commit the crime. *People v Knox*, 256 Mich App 175, 183; 662 NW2d 482 (2003).

Additionally, defendant argues that the evidence should have been excluded under MRE 403, which states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, . . . waste of time, or needless presentation of cumulative evidence."

A "determination of the prejudicial effect of evidence is " 'best left to a contemporaneous assessment of the effect, presentation, and credibility of testimony" by the trial court.' " *People v Gonzalez*, 256 Mich App 212, 218; 663 NW2d 499 (2003) (citations omitted). Accordingly, a defendant must meet a high burden to show that a trial court abused its discretion by declining to exclude relevant evidence under MRE

403. Evidence of the past burnings was an essential component to the case presented by the prosecution. Such evidence was highly relevant to show defendant's knowledge of a problem requiring the use of ordinary care and diligence to avert the danger posed by the conduct. Almost all evidence of prior behavior has some prejudicial effect. Here, defendant argued that the evidence was used not to prove knowledge of the problem, but to prove that she was a bad parent who refused to control her children's behavior. We disagree. The trial court did not abuse its discretion by declining to exclude the evidence under MRE 403.

VI

Defendant contends the trial court erred by admitting into evidence a statement she made that she "didn't care how the other two boys were doing, as long as her [sic] and her kids were all right." The trial court opined that the evidence was relevant because it demonstrated knowledge of a situation likely to cause serious harm if ordinary care is not exercised. The prosecution would have us hold that the statement is proof that if defendant did not care about the harm that might result to others from her children playing with lighters, it is reasonable to conclude that she would be more likely to fail to take measures to keep them from getting lighters, and that the statement was therefore relevant. We disagree. The more plausible purpose for the introduction into evidence of this statement was to prejudice the jury by showing the defendant to be a cold, dispassionate individual. Even if relevant, its prejudicial effect far outweighed its probative value.

Having found that the trial court erred in the admission of this testimony, we turn to MCL 769.26, which states:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

See also MCR.2613(A). MCL 769.26 means that appellate courts should not reverse a conviction unless the error was prejudicial. *People v Mateo*, 453 Mich 203, 210; 551 NW2d 891 (1996); *People v Robinson*, 386 Mich 551, 562; 194 NW2d 709 (1972). Whether a preserved nonconstitutional error is harmless depends on the nature of the error and its effect on the reliability of the verdict in light of the weight of the untainted evidence. *People v Whittaker*, 465 Mich 422, 427; 635 NW2d 687 (2001). The error is presumed to be harmless, and the defendant bears the burden of showing that the error resulted in a miscarriage of justice. *People v Lukity*, 460 Mich 484, 493-494; 596 NW2d 607 (1999).

While we find the error to be prejudicial to defendant, in keeping with our Supreme Court's holding in *Lukity*, *supra*, we find that it is not likely that this error affected the outcome of the trial. Therefore, we hold that the error committed by allowing the statement into evidence does not warrant reversal or a remand for a new trial because the great weight of untainted evidence supported the jury's verdict of guilt.

VII

Defendant contends that she was denied her due process right to a fair trial when the court admitted into evidence a recording of the 911 call made by the victim's mother during the fire. The prosecution requested that the recording be admitted unless defendant stipulated the victim's cause of death. Defendant refused to so stipulate. We find that the evidence was highly relevant because it was evidence that the victim suffered smoke inhalation that interfered with his breathing, which would be consistent with his death being a direct result of the fire. In such circumstances, admission of the tape was not unfairly prejudicial in light of its relevance to the cause of death. Therefore we hold that the trial court did not err in admitting this tape into evidence, nor did its admission deny the defendant her due process right to a fair trial. From every statement or piece of evidence admitted there is likely to be some prejudicial effect. However, mere prejudice is insufficient to justify reversal. Defendant must demonstrate that the admission of the evidence unfairly prejudiced her right to a fair trial.

VIII

Defendant argues that the trial court erred at sentencing by scoring twenty-five points under the offense variable (OV) 3 for life-threatening or permanent incapacitating injury to another victim staying at the Byers's home. We disagree.

Resolution of this issue turns on a question of statutory construction, which this Court reviews de novo.

*People v Jones*, 467 Mich 301, 304; 651 NW2d 906 (2002).

MCL 777.33(1) provides that OV 3 "is physical injury to a victim" and is to be scored by determining which of several entries on a chart of possible scores apply and "by assigning the number of points attributable to the one that has the highest number of points." The trial court's scoring of twenty-five points for OV 3 on the basis of the injury to Jeremiah correlates on this chart with "[l]ife threatening or permanent incapacitating injury occurred to a victim." MCL 777.33(1)(c).[2]

However, neither MCL 777.33 nor any other statutory provision provides a definition of "victim" for purposes of OV 3. Jeremiah clearly was, in a fundamental sense, a victim of the conduct underlying defendant's conviction because he was seriously harmed as a result of the fire. Because the proper meaning of "victim" as used in MCL 777.33 is not clear and unambiguous, we must seek " 'to effectuate the Legislature's intent through a reasonable construction, considering the purpose of the statute and the object sought to be accomplished.' " *People v McKinley*, 255 Mich App 20, 28; 661 NW2d 599 (2003), quoting *Macomb Co Prosecutor v Murphy*, 464 Mich 149, 158; 627 NW2d 247 (2001). We have found no case law establishing the proper meaning of the term "victim" for purposes of OV 3 in the present context.

Defendant contends the Legislature's use of the term "victim" in the singular in MCL 777.33 is indicative of its intent that OV 3 apply only to the victim of the charged offense. Clearly, under the rules of statu-

---

[2] It is undisputed that the higher number of points available under OV 3 for a victim being killed could not be scored on the basis of Christopher's death.

tory interpretation, "[e]very word importing the singular number only may extend to and embrace the plural number, and every word importing the plural number may be applied and limited to the singular number." MCL 8.3b. Further, if the Legislature had intended to limit the application of OV 3 to the victim of the charged offense, it could have expressly included such a provision in the statute. "The Legislature is presumed to be familiar with the principles of statutory construction." *Inter Cooperative Council v Dep't of Treasury*, 257 Mich App 219, 227; 668 NW2d 181 (2003), and when promulgating new laws it is presumed to be aware of the consequences of its use or omission of statutory language. *People v Ramsdell*, 230 Mich App 386, 392; 585 NW2d 1 (1998). Because we find no authority indicating otherwise, we conclude that, for purposes of OV 3, the term "victim" includes any person harmed by the criminal actions of the charged party.

Therefore, we conclude the trial court did not err by scoring twenty-five points for OV 3 on the basis of Jeremiah's injuries.

Affirmed.