# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DEVEN NELSON,

Defendant-Appellant.

UNPUBLISHED
February 24, 2015

No. 319139
Calhoun Circuit Court
LC No. 2012-003311-FC

Before: RIORDAN, P.J., and MURPHY and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of armed robbery, MCL 750.529, and first-degree murder, MCL 750.316. Defendant was convicted of being involved in the murder of Larry Evans, who was severely beaten and shot at close-range in the head while in his home. Defendant was sentenced as a second-offense habitual offender, MCL 769.10, to concurrent terms of life imprisonment for armed robbery and life imprisonment for first-degree murder. We affirm.

## I. INTERROGATION VIDEO

## A. STANDARD OF REVIEW

We review constitutional issues *de novo*. *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006). We review for an abuse of discretion a trial court's decision to admit evidence. *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013). "A trial court abuses its discretion when it chooses an outcome that falls outside the range of principled outcomes." *Id.* An evidentiary error is harmless unless it is more probable than not that the outcome of the trial would have been different but for the admission of the improper evidence. *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999).

## B. LEGAL STANDARDS

The sole issue defendant raises on appeal is that the trial court erred in admitting certain statements from a police interrogation video. Broadly, the objected-to statements are defendant's references to his criminal history, questions relating to the reputation of defendant's family, and references to the co-perpetrators' accusations that defendant was involved in the crimes. Defendant contends that this evidence was improper because it constituted inadmissible hearsay,

-1-

vouching, and character evidence, and was prejudicial and irrelevant. He further contends that the references to the co-perpetrators' statements violated the Confrontation Clause.

Statements of an accused made during custodial interrogation are admissible if the accused voluntarily, knowingly, and intelligently waives his Fifth Amendment rights. *People v Cortez (On Remand)*, 299 Mich App 679, 715; 832 NW2d 1 (2013). A defendant's statement does not constitute hearsay, as it is admissible as an admission by a party opponent. MRE 801(d)(2); *People v Kowalak*, 215 Mich App 554, 556-557; 546 NW2d 681 (1996). Further, a statement constitutes hearsay only if it is offered for the truth of the matter asserted. MRE 801(c). However, evidence of a person's character generally "is not admissible for the purpose of proving action in conformity therewith on a particular occasion" and "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." MRE 404(a) and (b).

As our Supreme Court recently confirmed, an interrogator's out-of-court statements, even if they bear on a person's credibility, may be admissible in order to provide the full context of a defendant's statements during the interrogation. *Musser*, 494 Mich at 353. Nevertheless, "even if an out-of-court statement is not offered for the truth of the matter asserted, the statement is not automatically admissible because the touchstone of admissibility is relevance." *Id.* at 354. As our Supreme Court has cautioned, an interrogator's statements must be relevant to their proffered purpose, they remain subject to MRE 403,[1] and the trial court "must vigilantly weed out otherwise inadmissible statements that are not necessary to accomplish their proffered purpose." *Id.* at 354 (quotation marks and citation omitted). While a limiting instruction may reduce the prejudice of an improperly admitted statement, it is not always sufficient to cure the prejudicial effect of such evidence. *Id.* at 365.

The Confrontation Clause prohibits the admission of out-of-court testimonial statements unless the declarant was unavailable at trial and the defendant had a prior opportunity for cross-examination. *People v Chambers*, 277 Mich App 1, 10; 742 NW2d 610 (2007). Generally, a statement that police officers take in the course of an interrogation is testimonial. *Crawford v Washington*, 541 US 36, 52; 124 S Ct 1354; 158 L Ed 2d 177 (2004). "However, the Confrontation Clause does not bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted." *Chambers*, 277 Mich App at 10-11. In other words, a statement offered to show the effect it has on the person listening does not violate the Confrontation Clause. *Id.* at 11.

Moreover, evidentiary error is "presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative." *People v Krueger*, 466 Mich 50, 54; 643 NW2d 223 (2002) (quotation marks and citation omitted). An error is "outcome determinative if it undermined the reliability of the verdict. That

---

[1] MRE 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

determination requires" a court to "focus on the nature of the error in light of the weight and strength of the untainted evidence." *Id.*

"Harmless error analysis applies to claims concerning Confrontation Clause errors." *People v Shepherd*, 472 Mich 343, 348; 697 NW2d 144 (2005). See also *People v Pipes*, 475 Mich 267, 276; 715 NW2d 290 (2006); *People v Henry (After Remand)*, 305 Mich App 127, 144; 854 NW2d 114 (2014) ("[w]e review preserved issues of constitutional error to determine whether they are harmless beyond a reasonable doubt. A constitutional error is harmless if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." (Quotation marks and citation omitted)); *People v Bell*, 264 Mich App 58, 63; 689 NW2d 732 (2004). Likewise, "[r]eversal for failure to provide a jury instruction is unwarranted unless it appears that it is more probable than not that the error was outcome determinative." *People v McKinney*, 258 Mich App 157, 163; 670 NW2d 254 (2003).[2]

## C. APPLICATION

After a review of the record, we find that any error in the admission of the disputed portions of the interrogation does not warrant reversal. *Shepherd*, 472 Mich at 348; *Henry (After Remand)*, 305 Mich App at 144; *Krueger*, 466 Mich at 54. The prosecution presented significant, untainted evidence of defendant's guilt. The victim's son was present during the robbery. He was in the basement when he heard a sound like a door being kicked open, but later speculated it was the gunshot that killed his father. The victim was found upstairs with a gunshot to the head. The gun residue on his head indicated that he was shot from a distance of a few inches. He had several lacerations on his face and head, 21 rib fractures, bruised lungs, and a lacerated spleen. The injuries were inflicted while he was alive. Before his death, he only communicated that "they" hit him.

While the victim was upstairs, the victim's son was hiding behind a cabinet in the basement. One of the perpetrators—Deshawn Colbert, Jr.—came down to the basement. After realizing that the victim's son was there, Deshawn Jr. alerted the others that someone was hiding in the basement. The victim's son then heard two other men come down to the basement and he recognized defendant's voice as one of the men.[3] Defendant said, "B**** a** n***** come out or I'm shooting this whole basement up." Defendant ordered the other man who had accompanied him—Deshawn Colbert, Sr.—to turn on the light in order to locate the victim's son. Defendant was in the laundry room, throwing items around.

---

[2] Although defendant references a jury instruction in his brief, he does not raise it as an issue presented. Thus, it is not properly before us. *People v Albers*, 258 Mich App 578, 584; 672 NW2d 336 (2003).

[3] The victim's son testified that he was familiar with defendant's voice as he had heard it multiple times, although he realized whose voice it was after defendant and the others were arrested.

Fortunately for the victim's son, the police arrived before defendant found him in the basement. An officer outside of the house heard someone say, "where's the bag?" and "keep him f****** quiet." The police understood that as confirmation that a home invasion was in progress. One of the officers knocked on the front door. Defendant's brother opened the door but instantly slammed it in the officer's face. The police then made entry and arrested defendant's brother. They subsequently arrested defendant and the Colberts.[4] The victim's other son, who was not present at the time of the crime, testified that he kept marijuana in a bag inside of a television cabinet. He kept the cabinet locked, but discovered after the incident that the lock had been broken and contents of his closet were strewn about.

Thus, even without the interrogation video, there was significant evidence of defendant's guilt. At trial, the victim's son identified defendant as one of the perpetrators. Also relevant is that the victim died a violent death. Before he was shot at close range, he endured a savage beating; his injuries were so significant that the forensic pathologist could not definitely say if it was the gunshot or the other injuries that caused his death. Defendant had the victim's blood on several locations of his clothing. It was on his sweatshirt, the top of his boots, and the bottom of his boots

Further, when the officers entered the residence, defendant fled from the scene of the crime. One of the police officers gave chase, shouted that he was the police, and ordered defendant to stop. Defendant did not comply with the officer's order. The officer eventually tackled defendant and arrested him. See *People v Goodin*, 257 Mich App 425, 432; 668 NW2d 392 (2003) ("evidence of flight is admissible to support an inference of consciousness of guilt and the term flight includes such actions as fleeing the scene of the crime." (Quotation marks and citation omitted)). See also *People v Unger*, 278 Mich App 210, 226; 749 NW2d 272 (2008).

This is not a case where the jury was confronted with a "one-on-one credibility contest[,]" *People v Douglas*, 496 Mich 557, 579; 852 NW2d 587 (2014), or where the only evidence placing defendant in the victim's home was defendant's own statements. The jury had ample, untainted evidence on which to base its guilty verdicts. We also note that this is not a case where the trial court admitted the entire interrogation video with no attempt to weed out inadmissible statements. *Musser*, 494 Mich at 354. Rather, the trial court painstakingly went over each of defendant's objections. As defendant concedes, the trial court agreed with some of his objections, such as striking blatant references to his criminal history.

We also find that the prejudicial effect of the disputed evidence was relatively minimal. Any statements the co-perpetrators made to the police were not admitted at trial. Rather, it was the interrogator's representations of what the co-perpetrators allegedly stated that was admitted. Moreover, defendant vehemently denied his involvement in the crime and maintained his

---

[4] According to the Michigan Department of Corrections website, defendant's brother and Deshawn Sr. are serving life sentences for their involvement in the armed robbery and first-degree murder. Deshawn Jr. is serving 30 years for his involvement in the armed robbery, and life imprisonment for murder.

innocence. In fact, defendant's persistent denial during the interrogation served to bolster his claim of innocence.

We find that any error in the admission of the disputed questions and answers from the interrogation was harmless beyond a reasonable doubt, *Bell*, 264 Mich App at 63, and was not outcome determinative, *Krueger*, 466 Mich at 54.

## II. CONCLUSION

Because we find that any error in the admission of portions of the interrogation video was harmless beyond a reasonable doubt and did not alter the outcome of the proceedings, reversal is not warranted. We affirm.

/s/ Michael J. Riordan
/s/ William B. Murphy
/s/ Mark T. Boonstra