# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MATTHEW JOHN SCOTTON,

        Defendant-Appellant.

UNPUBLISHED
November 24, 2015

Nos. 321370 & 325372
Charlevoix Circuit Court
LC No. 13-014711-FC

Before: METER, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

Following a jury trial, defendant, Matthew Scotton, was convicted of first-degree criminal sexual conduct (CSC I), MCL 750.520b(f) (sexual penetration through use of force causing injury), felonious assault, MCL 750.82, and domestic violence, MCL 750.81(2). Defendant was sentenced to serve 135 months to 40 years for the CSC I conviction, 32 months to 4 years for the felonious assault conviction, and 93 days for the domestic violence conviction, with credit for 291 days served. Defendant appeals as of right.[1] We affirm defendant's convictions, but remand with regard to his sentence pursuant to *People v Lockridge*, ___ Mich ___; ___ NW2d ___ (2015) (Docket No. 149703, issued July 29, 2015).

## I. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to support his CSC I conviction.[2] We disagree.

---

[1] In docket no. 321370, defendant appeals as of right his conviction and initial judgment of sentence. Defendant was subsequently resentenced after filing his claim of appeal. In docket no. 325372, defendant appeals as of right the judgment of resentencing. On January 23, 2015, we consolidated these appeals. *People v Scotton*, unpublished order of the Court of Appeals, entered January 23, 2015 (Docket Nos. 321370; 325372).

[2] Defendant raises this issue in a standard 4 brief. See Michigan Supreme Court Administrative Order 2004-6, Standard 4.

-1-

"A claim of insufficient evidence is reviewed de novo, in a light most favorable to the prosecution, to determine whether the evidence would justify a rational jury's finding that the defendant was guilty beyond a reasonable doubt." *People v McGhee*, 268 Mich App 600, 622; 709 NW2d 595 (2005).

In pertinent part, MCL 750.520b states as follows:

(1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:

* * *

(f) The actor causes personal injury to the victim and force or coercion is used to accomplish sexual penetration.

Here, defendant's sole argument is that the prosecutor failed to produce sufficient evidence to satisfy the "personal injury" element of MCL 750.520b(1)(f). "Personal injury" under the statute "means bodily injury, disfigurement, mental anguish, chronic pain, pregnancy, disease, or loss or impairment of a sexual or reproductive organ." MCL 750.520a(n). The victim's injury "need not be permanent or substantial." *People v Mackle*, 241 Mich App 583, 596; 617 NW2d 339 (2000).

Defendant's argument is without merit. The victim testified that defendant, after shoving her to the ground, forced her mouth apart to achieve oral penetration, which left bruising and scratches on her mouth and face. The victim also testified that she tasted blood and felt her mouth swelling as a result of defendant's actions and the injuries that she received. This evidence was sufficient to support a finding that the victim was subjected to a personal injury. See *id.*

## II. ADMISSION OF PHOTOGRAPHS

Defendant next argues that the trial court abused its discretion in admitting certain photographs that were taken by a registered sexual assault nurse examiner who interviewed and examined the victim. We disagree.

At trial, defendant objected to the admission of photographs taken by the nurse because they were not given to the defense until the evening before the trial, violating discovery rules. The prosecutor responded that she sent the photographs to defendant "about ten minutes probably after our office received them the day before trial started," and could not explain why her office had not received them from the police until that time. The court asked defense counsel "if [the photos] were delivered six months ago how would it be different today?" Counsel responded that had he received the photos earlier, he could have called as a witness a police officer who had also taken photographs and explored why the initial police photographer did not take photographs of some of the injuries that appeared in the nurse's photographs. The trial court noted that defendant had notice of the nurse's testimony about the injuries and had the other police photographs, which showed most of the injuries, and then concluded that there was not sufficient prejudice from the discovery violation to deny admission.

This Court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v McLaughlin*, 258 Mich App 635, 649; 672 NW2d 860 (2003). Likewise, a court's determination of how to handle a discovery violation is reviewed for an abuse of discretion. *People v Jackson*, 292 Mich App 583, 591; 808 NW2d 541 (2011), citing MCR 6.201(J). "When determining the appropriate remedy for discovery violations, the trial court must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance." *People v Banks*, 249 Mich App 247, 252; 642 NW2d 351 (2002). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008). Exclusion as a remedy for discovery violations is "an extremely severe sanction that should be limited to egregious cases." *People v Greenfield (On Reconsideration)*, 271 Mich App 442, 454-455 n 10; 722 NW2d 254 (2006). In addition, the defendant must show that the violation prejudiced him. *Id.*

We find no abuse of discretion in the trial court's decision to allow the prosecutor to admit the photographs into evidence. The record reveals that the late disclosure of the photographs was inadvertent; the prosecutor received them on the eve of trial. This is not an "egregious" violation of the discovery rules that would warrant exclusion. See *Greenfield (On Reconsideration)*, 271 Mich App at 454-455 n 10; *Banks*, 249 Mich App at 252-253. Moreover, defendant cannot establish prejudice. The photographs were admissible, and our review of them shows nothing inappropriate or otherwise unfairly prejudicial about them. And defendant can hardly claim he was surprised by the photographs, given that the photographs depicted injuries that had been described in police reports and other materials made available to him. See *People v Taylor*, 159 Mich App 468, 487-488; 406 NW2d 859 (1987) (rejecting the defendant's assertion of error when the defendant had independent knowledge of the materials in question). Further, because several witnesses testified as to the extent of the victim's injuries, we decline to find that the photographs made any difference in this case. While defendant argued at trial that prejudice arose from not being able to question a police photographer—who took different photographs of the victim's injuries—why she did not take photographs of the same injuries that the nurse did, we find no merit in such an argument. Defendant does not explain what he would have hoped to accomplish with his questioning of the first photographer. Nor does he provide any affidavits or other evidence of testimony he could have elicited. We note that while the photographers took photographs of different injuries, the differences in photographs could be explained by something simple and innocuous, such as the first photographer might not have noticed all of the injuries. Or, perhaps each photographer had a different investigative purpose in mind, and would not have thought to take the exact same set of photographs. With no offer of proof, we are left to speculate. We will not find prejudice based on speculation. See *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000) ("As the appellant [ ], defendant bore the burden of furnishing the reviewing court with a record to verify the factual basis of any argument upon which reversal was predicated.").[3]

---

[3] We note that defendant's statement of questions presented frames this issue as a constitutional one. The argument section of his brief, however, does not contain any such argument. Further, finding no error, we reject any constitutional claim defendant could make in this regard.

III. THE NURSE'S TESTIMONY

Defendant next argues that the trial court erred when it allowed the nurse to testify as a lay witness.[4] We disagree.

At trial, an issue arose as to whether the prosecutor could call the sexual assault nurse examiner who interviewed and examined the victim as an expert witness. Defendant objected to her testifying as an expert on the grounds that he had not received her curriculum vitae (CV) and she had not been labeled as an expert on the witness list. Defendant agreed that "she can still testify as a layperson," but did not want her to give any expert opinion testimony concerning whether the victim's injuries were caused by or consistent with the alleged sexual assault. Counsel later reiterated, "I don't have a problem with her coming in and testifying. It's whether or not it's [as] an expert." The trial court agreed with defendant's argument and allowed the nurse to testify as to the procedures she performed and what she observed, but, due to plaintiff's failure to comply with the CV and notice requirements, the court forbade her from testifying as an expert witness.

Now, defendant is arguing that the trial court erred in allowing the nurse to testify as a lay witness. We hold that this issue has been waived. Defendant induced the court into ruling the way it did—to allow the witness to testify as a lay witness—and cannot now claim on appeal that the trial court's decision to do as he asked was erroneous. "A defendant should not be allowed to assign error on appeal to something his own counsel deemed proper at trial." *People v Green*, 228 Mich App 684, 691; 580 NW2d 444 (1998). "To do so would allow a defendant to harbor error as an appellate parachute." *Id.*

To the extent defendant argues that the nurse should not have been allowed to present expert testimony and that there should have been a continuance, the issues are not reflected in the questions presented and accordingly, this Court may refuse consideration. *People v Albers*, 258 Mich App 578, 584; 672 NW2d 336 (2003). However, we again note that the nurse did *not* provide expert testimony. She testified as to the procedures she performed and what she observed during her examination and never opined as to whether the injuries were the result of a sexual assault. Moreover, given that the trial court ruled in favor of defendant and prevented the nurse from giving any expert testimony, it is unclear on what grounds the trial court could have ordered a continuance that was not requested by either party.[5]

---

[4] Defendant raises this issue in his standard 4 brief.

[5] To the extent defendant argues that he was denied his constitutional rights under the Sixth and Fourteenth Amendments, he abandons those arguments by failing to develop them. See *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009). Moreover, our review of these fleeting claims finds no error.

IV. SCORING GUIDELINES

Defendant next argues that the trial court erred in scoring prior record variable (PRV) 7, offense variable (OV) 3, OV 4, OV 10, and OV 11.[6] We disagree.

Defendant preserved these issues by challenging the guidelines scoring of PRV 7, OV 3, OV 4, OV 10, and OV 11 in a motion for resentencing. MCL 769.34(10); MCR 6.429(C); *People v Jones*, 297 Mich App 80, 83; 823 NW2d 312 (2012).

> Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [*People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (citations omitted).]

A. PRV 7

Defendant was scored 10 points for PRV 7. PRV 7 concerns "subsequent or concurrent felony convictions," and 10 points is appropriate if "[t]he offender has 1 subsequent or concurrent conviction." MCL 777.57(1)(b).

Here, defendant was convicted of two felonies, CSC I and felonious assault. The CSC I conviction was the sentencing offense and the felonious assault was a subsequent or concurrent conviction. This subsequent or concurrent conviction was sufficient to support the 10-point score for PRV 7, and defendant has provided no argument as to why it would not qualify under the statute. Accordingly, we uphold the trial court's scoring decision with regard to PRV 7.

B. OV 3

Defendant was scored 10 points for OV 3. OV 3 covers "physical injury to victim," and 10 points is appropriate if there is evidence that a "bodily injury requiring medical treatment occurred to a victim." MCL 777.33(1). The phrase "requiring medical treatment" "refers to the necessity for treatment and not the victim's success in obtaining treatment." MCL 777.33(3). Additionally, a score of five points is appropriate if a "bodily injury not requiring medical treatment occurred to a victim." MCL 777.33(1)(e). The statute also states: "Do not score 5 points if bodily injury is an element of the sentencing offense." MCL 777.33(2)(d).

Defendant asserts that "[t]his Court has agreed with [defendant] that if bodily injury is an element of [the] sentencing offense OV 3 cannot be scored." However, the statute does not preclude all scoring under OV 3 when bodily injury is an element of the sentencing offense. By its plain language, it only precludes a defendant from being scored pursuant to the five-point

---

[6] Defendant challenges all of these scores in his standard 4 briefs. Challenges to OV 10 and OV 11 were also raised on behalf of defendant by counsel in the principal brief on appeal.

-5-

category—in which the bodily injury does not require medical treatment—if bodily injury is an element of the sentencing offense. The prohibition against scoring 5 points under MCL 777.33(2)(d) makes no mention of a scenario where bodily injury *does require* medical treatment, and we decline to insert such language into the statute. As set forth in MCL 777.31(1), the trial court is to score the "highest number of points" under OV 3. Here, the fact that the victim suffered bodily injury requiring medical treatment necessitated a score of 10 points; nothing in the plain language of the statute suggests such a score was improper. See, generally, *People v Houston*, 473 Mich 399, 406 n 14; 702 NW2d 530 (2005). Defendant has provided no authority, nor have we found any, indicating that a defendant cannot be scored 10 points under OV 3—which entails bodily injury requiring medical treatment—when bodily injury is an element of the sentencing offense. Indeed, the instant case does not involve a scenario where the Legislature has explicitly stated that a sentencing court is to disregard a factor that was an element of the sentencing offense when scoring the offense variables. See *Hardy*, 494 Mich at 442 (unless expressly indicated in the guidelines, the guidelines "allow a factor that is an element of the crime charged to also be considered when computing an offense variable score.") (citation and quotation marks omitted). Furthermore, a preponderance of the evidence supports a finding that the victim required medical treatment, which included x-rays. Accordingly, we uphold the trial court's scoring decision with regard to OV 3.

## C. OV 4

Defendant was scored 10 points for OV 4. OV 4 covers psychological injury and 10 points is appropriate if "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). "In making this determination, the fact that treatment has not been sought is not conclusive." MCL 777.34(2). Zero points are to be scored when "[n]o serious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(b).

Defendant argues that the victim's psychological injury was pre-existing, and that there was insufficient evidence to establish that it resulted from his actions. Below, defendant argued that the victim had pre-existing psychological injuries, including depression, due to her husband's death, the anxiety associated with being responsible for two homes, the fact that she suffered from "empty nest syndrome", and the fact that she had lost her cat, and that there was no "professional testimony" establishing that she had received treatment. As the trial court noted, there is no "professional testimony" requirement. The record reveals that the victim was seen by a psychiatrist for post-traumatic stress disorder and had stated that she had trouble sleeping because she kept reliving the event. She also reported that she no longer felt safe at the condominium where the assault occurred. Accordingly, the court found the score of 10 points for OV 4 appropriate. Since the record supports the conclusion that the psychological injury was related to the crime, there is no merit to defendant's argument.

## D. OV 10

Defendant was scored 10 points for OV 10. OV 10 covers "exploitation of a vulnerable victim," and directs the trial court to score 10 points if "[t]he offender exploited . . . a domestic relationship." MCL 777.40(1)(b). "[T]o qualify as a 'domestic relationship,' there must be a

familial or cohabitating relationship." *People v Jamison*, 292 Mich App 440, 447; 807 NW2d 427 (2011).

On appeal, defendant asserts that there was no domestic relationship. However, he and the victim were in a romantic relationship, and defendant had his own key and had moved into the victim's condominium in Charlevoix. That defendant or the victim may have also maintained other residences does not alter the conclusion that the two were in a cohabitating relationship. This case is distinguishable from *Jamison* in the sense that defendant did more than merely keep some of his belonging's at the victim's condominium. Cf. *id.* (explaining that merely being permitted to keep belongings at a person's home does not equate to a cohabitating relationship). Rather, defendant in the instant case moved into the victim's condominium, which was a residence she frequented as she pleased. There is nothing in *Jamison* that requires the cohabitation to be exclusive or every day. Indeed, if that were the case, people who traveled for work or were often away from home would not be considered to be in a cohabitating relationship. Here, the two were clearly residing together in the condominium on the date when the assault occurred. Accordingly, we uphold the trial court's scoring decision with regard to OV 10.[7]

### E. OV 11

Defendant was scored 25 points for OV 11. OV 11 covers "criminal sexual penetration," and a score of 25 points is appropriate if "[o]ne criminal sexual penetration occurred." MCL 777.41(1)(b). The instructions to OV 11 state that "all sexual penetrations of the victim by the offender arising out of the sentencing offense" should be counted in scoring OV 11, MCL 777.41(2)(a), but a trial court should "not score points for the 1 penetration that forms the basis of a [CSC I] offense," MCL 777.41(2)(c).

The sole issue here is whether a penetration that occurred at 3:00 a.m.—several hours[8] after the sentencing offense—was one "arising out of the sentencing offense." In *People v Johnson*, 474 Mich 96, 101; 712 NW2d 703 (2006), our Supreme Court explained:

> As already discussed, we have previously defined "arising out of" to suggest a causal connection between two events of a sort that is more than incidental. We continue to believe that this sets forth the most reasonable definition of "arising out of." Something that "aris[es] out of," or springs from or results from something else, has a connective relationship, a cause and effect relationship, of more than an incidental sort with the event out of which it has

---

[7] Although defendant's brief on appeal does not directly challenge whether there was exploitation as is required for scoring OV 10, we find no error in the trial court's conclusion that defendant exploited the domestic relationship.

[8] The exact time between the sentencing offense and the other sexual penetration is unclear from the record. From our review of the record, the acts could have been as few as five hours apart, and as many as seven hours apart.

arisen. For present purposes, this requires that there be such a relationship between the penetrations at issue and the sentencing offenses.

The penetration that occurred at 3:00 a.m. arose out of the sentencing offense because it occurred as part of a continuous sequence of criminal acts that were more than just incidentally related to each other. The penetrations occurred at the same place, at approximately the same time, and a preponderance of the evidence shows that the fear instilled in the victim during the first penetration contributed to the occurrence of the second act. According to the victim's testimony, if not for the earlier sexual attack and threats from defendant, which occurred in the evening hours before the 3:00 a.m. penetration, she would not have submitted to the subsequent penetration. The victim testified that during the second incident, she believed that the knife defendant had previously wielded in a threatening manner was still in the room, and she was terrified given the night's previous events. In short, there was a sufficient "cause and effect relationship" between the two incidents. See *id.* Thus, a preponderance of the evidence supports a finding that the second penetration arose out of the sentencing offense. Accordingly, we uphold the trial court's scoring decision with regard to OV 11.

## V. *PEOPLE V LOCKRIDGE*

Defendant claims on appeal, as he did at sentencing, that his Sixth and Fourteenth Amendment rights were violated by judicial fact finding that increased the floor of the permissible sentence in violation of *Alleyne v United States*, ___ US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013). In *Lockridge*, __ Mich at __, slip op at 32-34, our Supreme Court agreed with this general proposition and held that for cases where a sentence was imposed on or before July 29, 2015, judicial fact-finding changed the recommended guideline range, and there was no upward departure, a defendant is entitled to a remand, in a manner consistent with *United States v Crosby*, 397 F3d 103 (CA 2, 2005), for a decision by the trial court as to whether it would have imposed a different sentence knowing the guidelines range is now advisory.[9]

Here, at a minimum, it is clear that the 25-point score for OV 11 was the result of judicial fact-finding. Indeed, the jury acquitted defendant of the CSC I charge related to the sexual penetration that occurred at 3:00 a.m., and which formed the basis for the trial court's 25-point

---

[9] *Lockridge* held as follows:

> [O]n a *Crosby* remand, a trial court should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing. If notification is not received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have defendant present, as required by law, if it decides to resentence the defendant. Further, in determining whether the court would have imposed a materially different sentence but for the unconstitutional constraint, the court should consider only the circumstances existing at the time of the original sentence. [*Lockridge*, __ Mich at __, slip op at 35–36.]

score for OV 11. This 25-point score increased defendant's OV total from 30 points to 55 points, which put defendant in OV level III, with a corresponding guideline range of 81 to 135 months. Without this 25-point score, defendant would have been in OV level II, with a corresponding guideline range of 51 to 85 months. MCL 777.62. Thus, defendant meets the requirements for a "*Crosby*" remand as set forth in *Lockridge* in order to determine whether the error was harmless beyond a reasonable doubt. See *People v Stokes*, __ Mich App __; __ NW2d __ (Docket No. 321303, issued September 8, 2015), slip op at 9 (holding that although *Lockridge* involved a situation where the pertinent issue was unpreserved, the *Crosby* remand procedure described in *Lockridge* nevertheless applied to cases where the defendant preserved the Sixth Amendment issue, such as occurred in the case at bar).

Affirmed as to defendant's convictions. Remanded with regard to defendant's sentence. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Stephen L. Borrello
/s/ Jane M. Beckering