# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL PATRICK-MURPHY HAMILTON,

        Defendant-Appellant.

UNPUBLISHED
August 1, 2017

No. 319980
Jackson Circuit Court
LC No. 12-004848-FC

## ON REMAND

Before: SAWYER, P.J., and M. J. KELLY and SHAPIRO, JJ.

SHAPIRO, J. (*dissenting*).

I respectfully dissent and would reverse and remand for a new trial.

My colleagues initially declined to reach the question of whether it was error for the trial court to admit expert testimony from Rosemary Heise reasoning that even if it was error, it was harmless because her testimony was cumulative. *People v Hamilton*, unpublished opinion per curiam of the Court of Appeals issued February 9, 2016 (Docket No. 319980), slip op at 6-7. The Supreme Court vacated the relevant portion of that opinion and remanded with several directions. *People v Hamilton*, 500 Mich 938; 889 NW2d 508 (2017). First, we were to reconsider defendant's claim that Heise's testimony should not have been admitted. *Id*. Second, we were directed to reconsider the issue of harmless error with an examination of the entire case rather than relying solely on the conclusion that the testimony was cumulative. *Id*.

On remand, my colleagues now agree that it was error to admit Heise's testimony. They ground their conclusion on the factors I reviewed in my dissent. See *People v Hamilton*, unpublished dissenting opinion of SHAPIRO, J., issued February 9, 2016, slip op at 9-13. They agree that Heise's testimony, including her "diagnosis" of defendant as an "active addict," her speculation that his prescription medication records were not reliable, and her assumption that defendant had taken Adderall and was experiencing Vicodin withdrawals at the time of the shooting despite the fact that he demonstrated no withdrawal symptoms at any time following his arrest, which occurred only minutes after the shooting, was "an extremely broad and ultimately speculative set of opinions." Heise's improper testimony also included her opinion that defendant's "prognosis" for recovery from "addiction" was "poor," and that addicts, as a class, steal and commit violent crimes. My colleagues also now recognize the particular impropriety of

-1-

such testimony by an "expert" who carried the imprimatur of the court in that she worked for the county's drug court and addressed her report to the trial court rather than the prosecutor. While they did not adopt the language of my dissent, I respectfully suggest that in essence they adopted the view I expressed in that opinion.

Despite its recognition of this "expert" opinion testimony was improper and its characterization of its prejudicial effect as "substantial," the majority nevertheless concludes that its admission was harmless error and that a new trial is not necessary. I disagree. The majority's stated reasons for its conclusion are that: 1) Heise's testimony that defendant killed the victim in order to get money to buy drugs was cumulative to that of other experts and evidence, 2) defendant effectively cross-examined Heise and conducted a sur-rebuttal, 3) the prosecutor did not emphasize Heise's testimony in closing argument, 4) the trial court read the standard jury instructions, and 5) there was untainted evidence that suggested defendant was not legally insane at the time of the shooting. I disagree with these characterizations for the reasons set forth below.

## A. CUMULATIVENESS

In support of its view that the evidence was cumulative, the majority refers to properly admitted evidence that defendant may have been abusing Adderall. On three occasions out of many months, defendant did obtain early refills, but these were with physician knowledge and consent. No lay witness testified that they observed defendant abusing that drug, and neither defendant's physicians nor the prosecution's examining psychiatrist reached such a conclusion. While the evidence could support speculation that defendant was abusing the drug, it was only through the testimony of Heise that this speculation was converted into the confident determination of a court employed expert. Heise testified:

- that defendant's use of marijuana as a teenager had affected his brain, with resulting long term cognitive and emotional consequences (despite the fact that she never met or interviewed defendant and failed to review most of his medical records),

- that the State of Michigan Automated Prescription record, which defendant relied on to show what drugs he had been prescribed and when he had filled and refilled those prescriptions, was often incomplete and inaccurate,

- that if someone is addicted to one drug but no longer using they are still an "active addict" if they are taking any drugs even if in compliance with physician orders,

- that she "diagnosed" defendant as an "active addict,"

- that "active addicts" are violent and steal,

- that defendant would have sought out drugs to feed his alleged addiction "at all costs,"

- that defendant's drug use was tantamount to "speed-balling" heroin and amphetamines,[1]

- that defendant having fans on at the cottage on an 81 degree day meant that he was experiencing high blood pressure and excessive body heat due to taking too much Adderall,[2]

- that her views were routinely relied upon by the judges of Jackson county circuit court - the same court in which this trial occurred.

None of these factual claims or opinions were established or even alluded to by other evidence in the record. Without Heise's testimony, the prosecution's theory that defendant was an active drug addict who shot Marcyan out of a desperate need for his next fix was based on nothing other than sheer speculation. Therefore, I cannot agree that Heise's testimony was cumulative.

## B. CROSS-EXAMINATION AND SUR-REBUTTAL

I agree with the majority that defense counsel's cross-examination was reasonably well done, but it could not possibly have put the genie back in the bottle. Defense counsel obtained admissions from Heise that she had not reviewed many of the relevant documents, that she only reviewed limited portions of testimony, and that she was not a physician or psychiatrist. However, the rest of the cross-examination was largely composed of defense counsel's references to contrary evidence and asking if Heise was aware of it. Often Heise conceded that she had not reviewed evidence, but she made clear to the jury that in her role at the Jackson County Drug Court she offered recommendations based on limited evidence, and at no point were her claims or opinions withdrawn or even modified.

Defendant was permitted to present sur-rebuttal, and both Dr. Wendt, the defense forensic psychiatrist, and Dr. Gibbons, an expert in addiction psychiatry, expressed their criticism of Heise's testimony. However, I fail to see how this rendered harmless Heise's far-reaching testimony since despite their criticisms the jury was free to accept Heise's speculation as true and as the valid opinion of an expert. Indeed, she was presented as the only expert the judges of Jackson County routinely rely upon.

## C. THE PROSECUTOR'S CLOSING ARGUMENT

I believe the majority is in error in its suggestion that the prosecutor did not emphasize Heise's testimony in closing argument. To the contrary, while not always attributed directly to Heise, the prosecution built its entire theory of the case on her testimony. As I noted in my previous dissent:

---

[1] She also stated in her report, which was admitted as an exhibit, "I wonder if [defendant] wasn't snorting."

[2] This was of course, contrary to all the medical testimony and records, which reveal neither high blood pressure nor excessive body heat before or after his arrest.

The only issue at trial was whether or not defendant was legally insane at the time he shot Marcyan. The lack of any apparent motive for defendant to have shot Marcyan presented a challenge for the prosecution. Indeed, in opening statement, one prosecutor addressed this issue squarely, telling the jury: "This case does not make sense in the usual sense . . . [sic] It doesn't involve money, drugs, women, jealousy, absolutely nothing." He went on to stress to the jury that motive is not an element of the offense. While the defense did not dispute this truism, it pointed out that the complete absence of motive for such a crime strongly supported the insanity defense.

In the opening statement, the prosecutor also explained to the jury the distinction between voluntary and involuntary intoxication. He explained that even if the jury believed that defendant was rendered mentally impaired or delusional by the Adderall this was legally insufficient to prove mental illness if it had been the result of a voluntary decision to take more Adderall than was prescribed. . . . [However], the psychiatrist who prescribed the medication, the defense forensic psychologist and the prosecution forensic psychologist each of whom reviewed the medical records and examined defendant opined that defendant was taking the drug as prescribed and not abusing it.

According to the prosecutor's testimony at the *Ginther* hearing, after opening statements had been given and proofs were underway, the second prosecutor developed an alternative theory of the case. She concluded that defendant was an active opiate addict, needed to obtain an opiate "fix" at the time of the shooting, and that he shot Marcyan in order to rob him so that he could purchase that "fix." (footnote omitted). This theory addressed the two areas of weakness in the prosecution's case. First, it answered the question of motive. It defined a rational motive for defendant to have shot Marcyan. Second, even if the jury believed the prescribed Adderall had affected defendant's mental state, it showed that a second drug, one which was not prescribed, was involved thereby negating any claim of involuntary intoxication.

In closing argument, the prosecution presented its new theory, telling the jury that defendant was "nothing but a run of the mill drug addict, out of money, out of drugs, looking for his next fix" when "along comes opportunity. Opportunity knocking at his door, driving a BMW, wearing over $30,000 worth of jewelry . . . A Rolex gold ring with a diamond in it so big its flashing in the sun . . . [Defendant] must have thought he'd hit the jackpot." The prosecutor argued, "Once an addict, always an addict." The only testimony to support this claim was Heise's. Only Heise's testimony allowed the prosecutor to tell the jury, "Turns out [defendant is] nothing but a run of the mill addict, out of money, out of drugs, looking for his next fix." [*People v Hamilton*, unpublished dissenting opinion of SHAPIRO, J., issued February 9, 2016 (Docket No. 319980), slip op at 4-5.]

-4-

### D. THE TRIAL COURT'S INSTRUCTIONS

I strongly disagree with the majority's suggestion that because the trial court gave the standard instructions on expert testimony, the prejudicial effect created by Heise's testimony was negated. The majority offers no reasons for this conclusion, and I cannot imagine one. A standard instruction is not effective to wipe away the effects of the testimony of someone who testified as an expert when in fact she was not. Nor did it address the impression that Heise was a particularly reliable expert given her role in the Jackson Circuit Court. As to these problems, the standard instruction was of little or no use. It could not have alleviated the prejudicial effect of Heise's testimony.

### E. THE UNTAINTED EVIDENCE

While I do not disagree with the majority's conclusion that there was untainted evidence that suggested defendant was not legally insane at the time of the shooting, I strongly disagree with the conclusion that the mere presence of such untainted evidence rendered Heise's improper testimony harmless. Admission of Heise's improper "expert" testimony radically changed this trial. Whether a preserved, nonconstitutional error is harmless depends upon the nature of the error and its effect on the reliability of the verdict in light of the weight of the untainted evidence. *People v Whittaker*, 465 Mich 422, 427; 635 NW2d 687 (2001); *People v Mateo*, 453 Mich 203, 215; 551 NW2d 891 (1996); *People v Albers*, 258 Mich App 578, 590; 672 NW2d 336 (2003), lv den 469 Mich 1026 (2004). Error justifies reversal if it is more probable than not that it affected the outcome. *People v Young*, 472 Mich 130, 141-142; 693 NW2d 801 (2005); *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). An error determined the outcome if it undermined the reliability of the verdict. *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010). In this case it is clear that the improper testimony "undermined the reliability of the verdict."

This is not the sort of case where the erroneously admitted evidence was minor in comparison to the strength of the prosecution's remaining case. Without Heise's testimony, the prosecution had no evidence to support its theory regarding defendant's motive. And while it is true that motive is not an element of the charged offenses and that there was legally sufficient evidence from which the jury could have convicted defendant absent Heise's testimony regarding defendant's motive, the prosecution obviously considered the absence of any apparent motive to be crucial enough hole in its case that it changed strategy mid-trial. Therefore, by concluding that a jury undoubtedly would still have convicted defendant without any evidence as to motive, the majority essentially substitutes its own view of the remaining evidence for that of the jury's.

### CONCLUSION

As my colleagues now concede, it was error to allow Heise to testify, particularly as an expert. Her testimony was filled with speculation, unsupported assertions, and an implicit claim to the court's belief in her knowledge and veracity. Moreover, her testimony was the only evidence from which the prosecution could establish its theory as to motive, and the apparent lack of motive was a key element of defendant's insanity defense. The erroneous admission of

her testimony was not harmless.  Accordingly, I would vacate defendant's conviction and remand for a new trial.


/s/ Douglas B. Shapiro