# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

NATHAN GENTRY,

        Defendant-Appellant.

UNPUBLISHED
April 28, 2016

No. 326228
Ingham Circuit Court
LC No. 13-000137-FC

Before: SAWYER, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of assault with intent to commit murder, MCL 750.83, carrying a concealed weapon (CCW), MCL 750.227(2), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to serve terms of imprisonment of 225 to 335 months for the assault conviction, 23 to 60 months for the CCW conviction, and two years for the felony-firearm conviction. The latter is consecutive to the assault sentence, but otherwise the sentences run concurrently. Defendant appeals as of right. We affirm defendant's convictions, but remand the case to the trial court for a determination of whether resentencing is required pursuant to *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), and *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

## I. FACTS

This case arises from a shooting that occurred in Lansing during the early morning hours of December 30, 2012. The prosecution presented evidence that, shortly after midnight, defendant engaged a woman working as a prostitute (hereafter N.V.) to provide oral sex for him and then demanded further sexual service which N.V. refused, causing defendant to become enraged, threaten N.V.'s life, briefly leave the scene to retrieve a gun, and then to shoot several times at N.V.'s boyfriend and protector.

A resident of the house toward which the boyfriend ran for cover testified that he and his wife were watching television at the time, that both went to the floor upon hearing shots, and that afterward there was a bullet hole in the side of his house at "head level" that had not been there before. A police investigator testified that he had hoped to recover the spent bullet, but aborted

-1-

that effort when it became apparent that the bullet had entered the house at an angle that made it impractical to locate.

## II. GUIDELINES SCORING

Defendant argues that the trial court misscored offense variables (OVs) 6, 9, 10, and 19 when calculating the recommended range for his minimum sentence under the sentencing guidelines. Defendant preserved appellate objections in connection with OVs 6, 9, and 10 by way of a proper motion in this Court to remand for resentencing.[1] See MCL 769.34(10); MCR 6.429(C). However, defendant's argument in connection with OV 19 is not preserved.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.* However, where an unpreserved claim of a guidelines scoring error, if vindicated, would cause the minimum sentence imposed to fall outside the corrected range, the issue is subject to review for plain error affecting substantial rights. *People v Kimble*, 470 Mich 305, 311-313; 684 NW2d 669 (2004).

### A. OV 6

The offender's intent to kill or injure is scored under OV 6. MCL 777.36(1). The trial court assessed 50 points, which subsection (1)(a) prescribes where the offender acted with the premeditated intent to kill.

The evidence included N.V.'s testimony that defendant became enraged, threatened to kill her, and announced that he was going for his gun, along with her boyfriend's testimony that he and the assailant exchanged looks and gestures and that the assailant drove away briefly before returning, approaching him, and shooting at him several times. That evidence well supported the trial court's conclusion that defendant had time to give the matter a second look before he elected to discharge his lethal firearm several times at his victim, see *People v Marsack*, 231 Mich App 364, 370-371; 586 NW2d 234 (1998), and thus its conclusion that defendant acted with the premeditated intent to kill for purposes of assessing 50 points for OV 6.

### B. OV 9

OV 9 concerns the number of victims. The trial court assessed 10 points, which is appropriate where "[t]here were 2 to 9 victims who were placed in danger of physical injury or death . . . ." MCL 777.39(1)(c). "[O]ffense variable . . . 9 in the sentencing guidelines cannot be scored using uncharged acts that did not occur during the same criminal transaction as the

---

[1] *People v Gentry*, unpublished order of the Court of Appeals, entered July 24, 2015 (Docket No. 326228).

sentencing offense." *People v McGraw*, 484 Mich 120, 121-122; 771 NW2d 655 (2013) (parenthetical and citation omitted).

Defendant emphasizes that the testimony indicated that he shot at N.V.'s boyfriend, but not at N.V. herself. Defendant also points out that the home-dweller described hearing gunshots and something "smack[] the side of the house," but that the police recovered no attendant bullet. We need not determine whether N.V. might be considered a victim for this purpose, because we conclude that the two home-dwellers who felt obliged to take cover on the floor themselves put the number of victims up to three.

The home-dweller testified that the street where the shooting was taking place was immediately to his left, and defendant's presentence investigation report (PSIR) indicated that the bullet hole "consistent with the shooting" that the police discovered was near a center window. That no bullets were actually recovered from the house's physical structure or curtilage negates neither the resident's account of the threats he and his wife experienced, nor the inference that the hole resulted from defendant's shooting rampage, with its location indicating that one of the shots narrowly missed a window through which it could have entered the room where the two were watching television. Because the latter two thus joined the actual target of the shooting as victims in the matter, the trial court properly scored OV 9 at 10 points.

C. OV 10

The trial court assessed defendant 15 points for OV 10, which concerns exploitation of a vulnerable victim. This is the total prescribed where the offender engaged in predatory conduct, MCL 777.40(1)(a), which is defined as "preoffense conduct directed at a victim for the primary purpose of victimization," MCL 777.40(3)(a). We find it unnecessary to address defendant's challenge of OV 10, given that there was no clear error in the scoring of OVs 6 and 9, as held above, that there was no clear error in the scoring of OV 19, as we shall discuss momentarily, and that, assuming error in the scoring of OV 10, the reduction of 15 points with respect to defendant's total OV score would not alter his placement at OV level VI in the class A grid. MCL 777.62; *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006) ("Where a scoring error does not alter the appropriate guidelines range, resentencing is not required.").[2]

D. OV 19

The trial court assessed defendant 10 points for OV 19, which MCL 777.49(c) prescribes where the offender "interfered with or attempted to interfere with the administration of justice." In briefing the matter the parties both indicate that the basis for the scoring of this variable was defendant's alleged attempt to persuade certain family members to conceal evidence related to

---

[2] Although we are remanding the case for *Crosby* proceedings pursuant to *Lockridge*, if resentencing ultimately does indeed take place, the point assessment for OV 10 would remain inconsequential, considering that defendant would still be at OV level VI regardless of the scoring of OV 10.

the case, as revealed in surveillance recordings of conversations defendant had with family members while incarcerated.[3]  At sentencing the prosecuting attorney reminded the court that defendant "involved his family, otherwise law abiding citizens, called them up, mom, dad, and sister asking them to assist in hiding the gun."  Defendant's PSIR in turn indicated that, "[w]hile incarcerated at the Ingham County jail, it was alleged that [defendant] contacted his mother and they conspired to tamper with evidence regarding these crimes," but "[h]e was not charged with a crime for these allegations."  Regardless of whether defendant was charged with any crime related to his communications with family members, the evidence was more than adequate to support the trial court's conclusion that defendant attempted to interfere with the administration of justice by trying to tamper with evidence by way of his family members.

In sum, resentencing is not warranted relative to whether the trial court clearly erred in finding that there existed a preponderance of evidence supporting the assessment of points for the challenged OVs.

### III.  EXTRANEOUS SENTENCING CONSIDERATIONS

Defendant argues that the trial court relied on extraneous considerations when imposing sentence, asserting that the court revealed such error in the following comments from the bench:

> We had 12 astute jurors. . . .  I heard the testimony and the evidence as did they, and we had a unanimous verdict on three counts, the largest one being assault with intent to commit murder and a lack of regard for a woman.

> Women are not Barbie dolls when you can pop off their heads and spread their legs and take the legs off and put them back without harm.  Women are not plastic gals without feeling.  You don't know that, sir, because you wouldn't have been in the car when you have a fiance' [sic] with a baby.

> *  *  *

> [If] you have a regard for a woman, you don't go to a strange woman. You take a woman out on a date.  You buy her a meal.  You send her flowers. You get to know her.  I don't care when it was, sir.  You don't go in a dark street, in a dark alley, and have a sexual anything with a woman or a man, for that matter.  Respect each other.  Respect your own body.  Because this is what happens. . . .

> As I listened to the victims and how traumatized they are for the rest of their lives and what you did, and we like it to have a civilized community in Lansing, Michigan.  This crime spree has to stop with everyone.  No guns, no prostitution, no firing bullets in the air, no treating women like Barbie dolls that we can break apart and put back together, because life doesn't work that way, sir.

---

[3] The propriety of admitting those recordings into evidence is discussed in part VII below.

-4-

Defendant points out that while the court was obviously expressing indignation over how he treated N.V. that night, it was her boyfriend who was in fact the victim of the shooting attack. Defendant further protests that he is responsible for only his own conduct, not for the general crime problem in Lansing. We find that the trial court did not actually add time to the minimum sentence imposed in connection with the comments at issue. Rather, viewed in context, it is apparent that the court was in fact lapsing into a conversational mode, responding to defendant's having done the same while pleading for mercy or leniency.

In particular, defendant expressed remorse, insisted that he never intended to hurt anyone, and asserted that he had changed "drastically" since the night of the crime. Defendant additionally expressed concerns regarding his relationships with, respectively, his fiancée, his young son, and his father. The trial court then offered the statements set forth above in response to defendant's entreaties. Although the trial court was responding to defendant's personal statements, we do believe that the court did go overboard with its remarks, but, again, the court clearly did not add time to the sentence on the basis of its commentary. No error is apparent.

## IV. JUDICIAL FACT-FINDING

Defendant next argues that the trial court engaged in unconstitutional judicial fact-finding in assessing the OVs for purposes of establishing the minimum sentence range and imposing sentence. Defendant did not raise this issue below; therefore, "our review is for plain error affecting substantial rights." *Lockridge*, 498 Mich at 392. In *Lockridge*, our Supreme Court held:

> Because Michigan's sentencing guidelines scheme allows judges to find by a preponderance of the evidence facts that are then used to compel an increase in the mandatory minimum punishment a defendant receives, it violates the Sixth Amendment to the United States Constitution . . . . To remedy the constitutional flaw in the guidelines, we hold that they are advisory only.

> To make a threshold showing of plain error that could require resentencing, a defendant must demonstrate that his or her OV level was calculated using facts beyond those found by the jury or admitted by the defendant and that a corresponding reduction in the defendant's OV score to account for the error would change the applicable guidelines minimum sentence range. If a defendant makes that threshold showing and was not sentenced to an upward departure sentence, he or she is entitled to a remand for [sic] the trial court for that court to determine whether plain error occurred, i.e., whether the court would have imposed the same sentence absent the unconstitutional constraint on its discretion.[4] If the trial court determines that it would not have

---

[4] The Court referred to such remands as "*Crosby* remands" after the procedures outlined in *Crosby*, 397 F3d 103. *Lockridge*, 498 Mich at 395-399. "*Crosby* remands are warranted only in cases involving sentences imposed on or before July 29, 2015 . . . ." *Id.* at 397. Defendant here was sentenced before July 29, 2015.

imposed the same sentence but for the constraint, it must resentence the defendant. [*Id.* at 399.]

A review of the record in this case reveals that the trial court relied on facts beyond those admitted by defendant or found by the jury relative to multiple OVs, which OVs, if not considered or assessed, would reduce defendant's total OV score by an amount sufficient to lower the guidelines minimum sentence range. MCL 777.62. Accordingly, defendant is entitled to a *Crosby* remand.

## V. FAILURE TO INVESTIGATE OR DISCLOSE EVIDENCE

Defendant argues that he was denied a fair trial by failures on the part of the police or prosecution to investigate or disclose evidence. This issue was not raised below. Accordingly, our review is for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

In arguing this issue, defendant sets forth the elements for a *Brady* violation, as if that is the theory underlying this issue, but then makes no effort to show how those elements were satisfied in this instance.[5] Defendant additionally cites authority for the proposition that a trial court may properly dismiss a criminal case over an egregious discovery violation, but then alleges no discovery violation in this case.[6] Instead, defendant complains generally about the failure to retrieve a bullet from the bullet hole discovered in the nearby house after the shooting.

However, defendant does not state how his defense was placed at any disadvantage for want of such a specimen. Further, a police investigator explained that he "cut back a little bit of the plastic or vinyl siding that was on the outside of the house," and then cut "some wood siding underneath" in an attempt to "dig out" the bullet, but "the bullet appeared to have gone into an angle in the house," which prevented him from locating it. The investigator elaborated that the bullet "was not fired from perpendicular to the house," and thus lodged in such a way that it could not be located.

---

[5] *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963), held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." To establish a *Brady* violation, a defendant must show that: (1) the state possessed evidence of exculpatory or impeachment value to the defendant; (2) the prosecution suppressed the evidence; and (3) the evidence, viewed in its totality, was material, meaning that had the evidence been disclosed to the defense, a reasonable probability exists that the result of the proceedings would have been different. *People v Chenault*, 495 Mich 142, 150-151; 845 NW2d 731 (2014).

[6] In fact, defense counsel told the jury in his closing argument that the prosecution "has supplied me with all of their evidence, statements, transcripts, DVDs, police reports, everything, and there are no surprises."

This record indicates no attempt by the prosecution or police to obscure evidence or prevent its discovery or use by the defense. The police investigator's testimony indicated a good-faith effort to retrieve the bullet. "Absent a showing of suppression of evidence, intentional misconduct, or bad faith, the prosecutor and the police are not required to test evidence to accord a defendant due process." *People v Coy*, 258 Mich App 1, 21; 669 NW2d 831 (2003). "Nor does due process require that the prosecution seek and find exculpatory evidence," "exhaust all scientific means at its disposal," or "search for evidence to aid" the defense. *Id.*

For these reasons, defendant's argument that the police or prosecution failed in some duty to discover or disclose evidence must fail.

## VI. ADMISSION OF FIREARMS INTO EVIDENCE

Defendant argues that the trial court plainly erred in allowing the prosecutor to place in evidence three revolvers seized from the household where defendant lived with his parents. Defendant alternatively argues that defense counsel was ineffective for failing to raise an objection in the matter.

Defendant's mother had voluntarily produced those weapons for the police, before the police returned to her home with a search warrant. All indications are that the three revolvers were legally owned, securely stored, well maintained, and showed no indication of having recently been discharged. Further, the shooting victim testified unequivocally that the handgun used against him was a semiautomatic, not a revolver.

We agree that the three revolvers were of minimal relevance to the prosecution's case. MRE 401. However, we conclude that the record indicates that defense counsel had strategic reasons for declining to object.

In cross-examining a police officer over those weapons, defense counsel elicited that there was no effort to check the weapons for defendant's fingerprints, or test them in connection with ballistics, gun residue, or defendant's clothing, hair, or skin. Then, in closing argument, defense counsel reminded the jury that the guns found in the home of defendant and his parents were legal "family pistols," which the police did not think worthy of testing for fingerprints, and that "the police didn't fully do their job trying to exclude a suspect as well as include him." Defense counsel thus recognized an opportunity to suggest to the jury that the lack of testing left defendant deprived of exculpatory evidence, or that the prosecution was satisfied to rest on a shaky evidentiary foundation. Because a strategic reason for preferring to cross-examine and argue over the prosecution's reliance on the challenged evidence, rather than object to its introduction, is readily apparent, defendant's claim of ineffective assistance predicated on that strategy must fail. See *People v Henry*, 239 Mich App 140, 146; 607 NW2d 767 (1999) (a defendant pressing a claim of ineffective assistance of counsel must overcome a strong presumption that counsel's tactics were matters of sound trial strategy).

We additionally conclude that because the prosecution sought introduction of the weapons in the first instance, and the defense sought to use that evidence to its own advantage, the trial court did not plainly err in admitting the weapons into evidence. Moreover, assuming

error and deficient performance by counsel, defendant has completely failed to establish any prejudice flowing from the admission of the evidence. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001); *Carines*, 460 Mich at 763.

Defendant grafts onto his argument for this issue the assertions that defense counsel was ineffective also for failing to object to the scoring of the sentencing guidelines variables discussed in Part II above, and for arguing to the jury that he personally believed the shooting victim's testimony. However, in setting forth as one of his questions presented the claim that defense counsel was ineffective, defendant based the claim on counsel's performance in connection with only the presentation of the firearms evidence discussed here. Those additional arguments are thus beyond the scope of the question actually presented for decision. This Court is not obliged to entertain arguments that are not germane to the issues set forth in the statement of questions presented. See *People v Albers*, 258 Mich App 578, 584; 672 NW2d 336 (2003); MCR 7.212(C)(5).[7]

## VII. ADMISSION OF JAILHOUSE PHONE CALLS INTO EVIDENCE

At trial, excerpts of surveillance recordings of telephone conversations between defendant and family members that took place while defendant was in jail were admitted into evidence and played for the jury. Commenting on those recordings, a police officer stated that use of the word "cookies" caught his attention, explaining "that the term cookies was basically a euphemism for guns or firearms." The officer additionally stated that references to "empty things" likely described shell casings. The officer further confirmed that defendant spoke to his sister about a knotted sock, and that a "jingling" sound picked up on the recording might have been shell casings in that sock. The officer explained that hearing those phone conversations induced him to obtain a search warrant, but that execution of the warrant in the presence of defendant's parents turned up no knotted sock, empty shell casings, or firearm other than the three revolvers defendant's parents had earlier and voluntarily produced.

Defendant argues that the trial court erred in admitting those recordings into evidence on the grounds that the recordings were not properly authenticated and that the statements composing them were inadmissible hearsay. These precise arguments were not raised below. See *People v Welch*, 226 Mich App 461, 464; 574 NW2d 682 (1997) (to preserve an evidentiary issue for appellate review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal). Again, unpreserved issues are reviewed for plain error affecting substantial rights. See *Carines*, 460 Mich at 763.

---

[7] They lack merit in any event. The initial failure to raise objections to the scoring of OVs 6, 9, and 10 was cured by a proper motion in this Court to remand for that purpose, and there was no error by the trial court with respect to the scoring of OV 19. Further, it is apparent from counsel's closing argument, viewed in context, that counsel was strategically encouraging the jurors to believe the shooting victim, who could not identify defendant as the shooter, as part of his campaign to persuade the jurors to disbelieve N.V., who did positively identify defendant. See *Henry*, 239 Mich App at 146.

Concerning the issue of authenticity, defendant suggests that the statements on the tapes attributed to him were not actually his statements, but rather those of some third party. The argument is unpersuasive. A police officer testified that he recognized defendant's voice on the recordings, from having spoken with defendant earlier, and further stated that defendant's identity as the speaker was well documented because "[e]verything is logged and videotaped up there as far as all the inmate's actions and who they call and what they do." In light of this record, the trial court did not plainly err for not having sua sponte raised concerns regarding the authenticity of the recordings. See MRE 901(b)(5) (voice identification) and (6) (authenticating telephone conversations).

Defendant's other unpreserved argument relating to the jailhouse phone calls involves hearsay. Testimony describing a person's out-of-court statements offered to prove the truth of the matters asserted is generally inadmissible as hearsay, subject to several exemptions and exceptions as provided by the rules of evidence. MRE 801-805. Again, defendant alleges that it was in fact not his voice that was captured and presented in the recordings of jailhouse phone calls, thus suggesting that the words attributed to him were actually those of some unknown third party, and thus lay outside the exemption from the definition of hearsay for admissions by a party opponent. See MRE 801(d)(2)(A). Because we find no merit in the challenge to the authenticity of the recordings, we find no merit in the hearsay challenge predicated on that challenge.

Defendant also argues that the statements of defendant's family members may not be considered statements of defendant for purposes of that exemption, which is a valid point to the extent that no family member said something that might be attributed to defendant on the basis of adoption, agency, or conspiracy. See MRE 801(d)(2)(B)-(E). But, again, hearsay is testimony concerning an out-of-court statement that is offered for the truth of the matter asserted, MRE 801(c), and defendant sets forth no statement in the jailhouse recordings from a family member that was actually asserting some matter at issue. Therefore, we conclude that the trial court did not plainly err for having declined sua sponte to prevent or otherwise limit the presentation of the jailhouse phone calls out of concerns relating to hearsay.

In his reply brief, defendant argues that the police officer's testimony interpreting the statements in the challenged recordings should not have been allowed for lack of proper foundation. This argument is unavailing because this issue is framed as a challenge to the admissibility of the jailhouse recordings, not the admissibility of that officer's testimony. See *Albers*, 258 Mich App at 584; MCR 7.212(C)(5). Further, an appellant may not raise a new issue in a reply brief, but must confine the reply to "rebuttal of the arguments in the appellee's or cross-appellee's brief." MCR 7.212(G). Moreover, we find no basis for reversal on substantive consideration of defendant's lack-of-foundation argument.

VIII. SUFFICIENCY OR GREAT WEIGHT OF THE EVIDENCE

Defendant frames this issue in terms of the great weight of the evidence, but, in arguing it, defendant digresses from challenging the great weight of the evidence to challenging its legal sufficiency. Regardless, the evidence was sufficient to support the verdicts, and the verdicts were not against the great weight of the evidence.

## A. SUFFICIENCY

The elements of assault with intent to commit murder are "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Hoffman*, 225 Mich App 103, 111; 570 NW2d 146 (1997). Defendant argues that the prosecution failed to prove the specific intent element. We disagree.

We review de novo the issue regarding whether there was sufficient evidence to sustain a conviction. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). In reviewing the sufficiency of the evidence, this Court must view the evidence, whether direct or circumstantial, in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012); *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992). Circumstantial evidence and the reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime. *Carines*, 460 Mich at 757. The prosecution need not negate every reasonable theory of innocence, but need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). We resolve all conflicts in the evidence in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

N.V. testified that defendant became enraged, repeatedly threatened her life, and announced his intention to retrieve a gun for that purpose. That evidence raised a reasonable inference that defendant formed the intent to kill in order to vent his rage, which remained with him as his confrontation with N.V. gave way to a confrontation with her boyfriend, the eventual shooting victim.

Further, "[a]n actor's intent may be inferred from all of the facts and circumstances, and because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient." *People v Fetterley*, 229 Mich App 511, 517-518; 583 NW2d 199 (1998) (citations omitted). In this case, defendant protested at sentencing that he shot in the air, never intending to endanger anyone. However, the victim's description of his assailant's firing several shots, and hearing them strike the house toward which he was running, suggested that defendant was not taking pains to discharge his handgun harmlessly, but instead did so in a manner consistent with a desire to strike his victim. Similarly, the home-dweller's testimony that a bullet hole appeared in his house after the shooting incident, and that the hole was at "head level," reasonably allowed the inference that defendant shot not in the air, but rather within striking range of a standing or running victim.

The evidence that defendant was angry, threatened to get a gun and kill N.V., and then left the area only briefly before returning to confront her companion and fire several gunshots in his direction and at body level, was sufficient to persuade a reasonable trier of fact that defendant acted with the specific intent to kill.

## B. GREAT WEIGHT

"The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2003) (citation omitted). Mere conflicting testimony and credibility concerns do not suffice to grant a new trial; rather, exceptional circumstances must exist, such as where directly contradictory testimony was so far impeached that it was deprived of all probative value, where witness testimony was so inherently implausible that a reasonable juror could not believe it, where testimony contradicted indisputable physical facts or defied physical realities, or where the case was marked with unacceptable uncertainties and discrepancies. *People v Lemmon*, 456 Mich 625, 643-646; 576 NW2d 129 (1998). "[A]bsent exceptional circumstances, issues of witness credibility are for the jury, and the trial court may not substitute its view of the credibility 'for the . . . jury determination thereof.' " *Id.* at 642, quoting *Sloan v Kramer-Orloff Co*, 371 Mich 403, 411; 124 NW2d 255 (1963).

Arguing for an alternative view of the evidence, defendant first protests that the bullet hole found in the house near the shooting lacked "any corroborative or scientific basis" to allow the inference that the hole was in fact caused by a bullet, or at least by a bullet fired by defendant at the time in question. But, again, the home-dweller's testimony that the damage to his house was not present before the shooting incident is itself good circumstantial evidence that the hole resulted from the shooting. Further, as discussed in Part V above, a police investigator identified what he thought was a bullet hole on the north side of the house, and expressed no doubt that the bullet itself was still present. Accordingly, the evidence concerning the bullet hole was marked by no uncertainty or discrepancy that would justify impugning the jury's verdict. See *Lemmon*, 456 Mich at 644.

Defendant otherwise challenges the great weight of the evidence by urging an appellate credibility determination. In this regard, defendant argues only that "the complainant . . . was not seen by any of the witnesses at or near the scene or even running from the scene and . . . was unreliable and incredible." Defendant does not specify whether by "complainant" he was referring to N.V. or the actual victim, her boyfriend. Either way, defendant does not elaborate on why this Court should deem the testimony unreliable or incredible. N.V.'s testimony that defendant became angry, threatened lethal violence, and repeatedly shot at her companion was neither inherently implausible nor seriously impeached. Likewise, the boyfriend's testimony concerning how the assailant shifted his confrontational focus from N.V. to him and then shot at him was not implausible or seriously impeached.

For these reasons, neither the testimony of either of those witnesses, nor the evidence concerning the bullet hole, provided a basis for discounting the jury's determination that defendant acted with the specific intent to kill. In sum, there existed no exceptional circumstances, and the evidence did not preponderate so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand.

## IX. CONCLUSION

For the reasons stated, we affirm defendant's convictions, but remand this case to the trial court for *Crosby* proceedings consistent with the directives in *Lockridge*, 498 Mich 358.

Affirmed, but remanded for possible resentencing under *Lockridge*. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ William B. Murphy
/s/ Amy Ronayne Krause