# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MICHELLE ELLEN MCINTOSH,

Defendant-Appellant.

UNPUBLISHED
August 23, 2016

No. 326840
Genesee Circuit Court
LC No. 14-035231-FC

Before: K. F. KELLY, P.J., and M. J. KELLY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial convictions of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, felon in possession of a firearm, MCL 750.224f, and carrying a concealed weapon, MCL 750.227. Defendant was sentenced, as a third habitual offender, MCL 769.11, to 2 years' imprisonment for the felony-firearm conviction and 57 months to 10 years' imprisonment each for the felon in possession of a firearm and carrying a concealed weapon convictions. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

This case arises from the homicide of Havana Wright in the early morning hours of April 22, 2013, at a nightclub called the Palm Tree Lounge, located on Clio Road in Flint, Michigan. Defendant asserted that she was at the lounge on the date of the incident with Jasmine Cooper, who became involved in an altercation at some point inside the lounge, and defendant broke up this scrum. Following the altercation, Palm Lounge security guards told defendant to leave the building. Defendant then walked to her car, where she retrieved a 9 millimeter hand gun from the glove box.[1] Defendant put the gun into the front side of her pants and walked back towards the lounge where Cooper was being escorted out of the building. At that time, the victim was also outside of the lounge near Cooper. Defendant, after a verbal altercation with the victim, fired four shots, the fourth of which entered the victim's chest and killed her. After shooting the victim, defendant returned to her vehicle and fled the scene.

---

[1] Defendant also admitted that she lacked the proper licensing to carry the handgun.

Later in the investigation process, Flint Police Department Sergeant Brian Murphree received information indicating that defendant may be at 2310 Kentucky Avenue in Flint, with a former boyfriend and attempting to leave the state in a white Cadillac. Such a vehicle was found at the Kentucky Avenue address, however defendant was not there. After receiving permission from the owner of the home to search the premises, police found an assault rifle in the attic of the home. This weapon was significant to Detective Sergeant Ronald Dixon because he had already observed a photograph of defendant with an SKS assault rifle, and no one in the residence claimed ownership of the rifle. The weapon was taken for safekeeping, given that an unclaimed assault rifle could not be left in the residence, and it was sent to the Michigan State Police crime laboratory for fingerprint analysis and to see if it matched evidence for any other possible shooting. The AK-47 rifle was ultimately admitted into evidence over defendant's objection.

After a jury trial, defendant was convicted of three felonies and sentenced as a third habitual offender. Defendant appeals as of right.

## II. ADMISSIBILITY OF ASSAULT RIFLE

Defendant first argues that the trial court abused its discretion by admitting into evidence an AK-47 rifle recovered in the attic of a house because the rifle did not constitute relevant evidence given the homeowner's purported lack of relationship with defendant. We disagree. "This Court reviews preserved evidentiary issues for an abuse of discretion. A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *People v Orr*, 275 Mich App 587, 588-89; 739 NW2d 385 (2007) (citation omitted).

In general, all relevant evidence is admissible, but evidence that is not relevant is not admissible. MRE 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401; see also *People v Mills*, 450 Mich 61, 66-67; 537 NW2d 909 (1995). Evidence need not be directed to an element of a crime or an applicable defense in order to be deemed material. *Id*. at 67. A fact is material if it is within the range of litigated matters in controversy. *Id*. at 68. Any tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence comprises sufficient probative force for the purpose of determining relevance. *Id*.

The credibility of witnesses offering testimony may be a fact that is of consequence to the determination of the action. *Id*. at 72. A party may draw in dispute the credibility of witnesses and may, within limits, produce evidence supporting or attacking their credibility. *Id*. "If a witness is offering relevant testimony, whether that witness is truthfully and accurately testifying is itself relevant because it affects the probability of the existence of a consequential fact." *Id*. Moreover, "it is essential that prosecutors and defendants be able to give the jury an intelligible presentation of the full context in which disputed events took place." *People v Sholl*, 453 Mich 730, 741; 556 NW2d 851 (1996). A jury is therefore ordinarily entitled to hear the "complete story" concerning a case. *Id*. at 742.

In this case, the AK-47 rifle recovered from the residence on Kentucky Avenue was relevant in giving the jury a complete picture of the investigatory process utilized by the police

concerning the shooting at the Palm Tree Lounge and was probative of the credibility of police witnesses who testified concerning the investigation at the Kentucky Avenue address and the recovery of the weapon. There was evidence that a police officer received a tip that defendant, who was a suspect in the Palm Tree shooting, may be at 2310 Kentucky Avenue with a former boyfriend and attempting to leave the state in a 2000 white Cadillac. Police officers went to the Kentucky Avenue address and found such a vehicle there. Defendant was not there, but the homeowner indicated she was aware of who defendant was and granted the police permission to search the house. Also present at the house was a man who identified himself as defendant's former boyfriend. During the search of the house, an officer found an AK-47 assault rifle in the attic. The homeowner indicated that the weapon was not hers and that she did not know who owned the weapon. The officers took the weapon into evidence for safekeeping, given that no one in the home claimed ownership of the rifle. Also, the weapon had possible evidentiary value because one of the police officers investigating this case had previously been shown a photograph of defendant holding what appeared to be an SKS-style assault rifle. The weapon was tested for defendant's fingerprints and underwent ballistics analysis to determine if it was the weapon used in the Palm Tree shootings. There was not enough ridge structure on the firearm to obtain a latent print that could be used for comparison to other fingerprints, and the weapon was determined not to have any association with the cartridge cases and bullet fragments recovered from the crime scene at the Palm Tree.

Therefore, although the AK-47 was ultimately excluded as having been used in the shootings at issue, the circumstances surrounding the recovery of the weapon and the testing of it for a possible relationship to this case served to inform the jury of the full context in which the crimes in this case were investigated by police. *Sholl*, 453 Mich at 741-742. The weapon was recovered during the search of a house to which police had been led in their investigation. The homeowner knew of defendant, and information provided in the tip was corroborated by the presence of a 2000 white Cadillac at the house and a man identifying himself as defendant's former boyfriend. An officer had already seen a photograph of defendant holding a similar type of weapon. The subsequent testing of the firearm was pertinent to provide the jury with the full context in which the investigation of the crimes occurred. Further, given that police witnesses had already testified about the recovery of the weapon by the time it was introduced into evidence, the admission of the weapon served to corroborate the testimony of the police witnesses, thereby bolstering their credibility. *Mills*, 450 Mich at 72. Accordingly, the trial court did not abuse its discretion in determining that the weapon constituted relevant evidence.

Defendant also makes a general assertion that the introduction of the rifle into evidence was unfairly prejudicial and misleading, as the jury could have speculated that defendant was the owner of the gun, or that it had some relationship to this case. However, defendant does not argue that any such unfair prejudice or misleading nature of the evidence substantially outweighed the probative value of the evidence such as to require exclusion. See MRE 403 ("Although relevant, evidence may be excluded it its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . "). "An appellant may not merely announce [her] position and leave it to this Court to discover and rationalize the basis for [her] claims, nor may [she] give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Therefore, defendant has not properly presented a claim that the evidence should have been excluded under MRE 403. *Id.* Defendant has not articulated whether or how she believes

the failure to exclude the evidence under MRE 403 constituted plain error affecting her substantial rights. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). As discussed, the evidence had probative value, and we discern no basis to conclude that the probative value was substantially outweighed by the danger of unfair prejudice or misleading the jury.

However, even if the trial court had erred in admitting the AK-47 rifle into evidence, the error would not require reversal of defendant's convictions, given the overwhelming evidence of defendant's guilt of the crimes. The trial court's determination that the evidence was relevant was preserved because defendant objected on that basis below. A preserved evidentiary error requires reversal only if the defendant establishes that it is more probable than not that the error was outcome determinative. *People v Knapp*, 244 Mich App 361, 378; 624 NW2d 227 (2001), citing *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999). "An error is deemed to have been 'outcome-determinative' if it undermined the reliability of the verdict. In making this determination, the reviewing court should focus on the nature of the error in light of the weight and strength of the untainted evidence." *People v Elston*, 462 Mich 751, 766; 614 NW2d 595 (2000) (citations omitted). To the extent that defendant challenges the admission of the evidence under MRE 403, that unpreserved claim is subject to the plain-error standard, which requires defendant to show that that a clear or obvious error affected the outcome of the proceedings. *Carines*, 460 Mich at 763.

Defendant was convicted at trial of felony-firearm, felon in possession of a firearm, and carrying a concealed weapon. The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony other than the four excluded felonies identified in the statute. MCL 750.227b(1); *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). The elements of felon in possession are that the defendant possessed a firearm, had previously been convicted of a specified felony, and had not regained eligibility to possess a firearm. MCL 750.224f; *People v Perkins*, 262 Mich App 267, 269-271; 686 NW2d 237 (2004), aff'd 473 Mich 626 (2005), abrogated on other grounds by *People v Smith-Anthony*, 494 Mich 669 (2013). The elements of carrying a concealed weapon are that the defendant carried a pistol or other dangerous weapon concealed on her person, or in a vehicle whether concealed or otherwise; in a place other than her dwelling house, place of business, or other land possessed by her; and without a license to do so. MCL 750.227.

In this case, there was overwhelming evidence, including defendant's own testimony and that of other witnesses, that defendant carried a pistol concealed in her pants from her vehicle to the Palm Tree parking lot and fired shots, including the shot that killed the homicide victim, Havana Wright. Defendant also admitted that she had placed the pistol in the glove box of the vehicle she was driving and that she did not have a concealed pistol license. The parties stipulated that defendant had previously been convicted of a specified felony and that she was ineligible to carry a firearm on the date of the incident. She possessed the firearm during her commission of the felon in possession offense.[2] Given the overwhelming evidence that

---

[2] Felon in possession may serve as the predicate felony for a felony-firearm conviction. See MCL 750.227b; *People v Calloway*, 469 Mich 448, 452; 671 NW2d 733 (2003).

-4-

defendant committed the offenses of which she was convicted, any error in admitting the AK-47 rifle into evidence was not outcome determinative and therefore does not require reversal.

## III. EXCLUSION OF WITNESS

Defendant next argues that the trial court erred in excluding the testimony of a proposed defense witness, Tanae Gray, concerning a prior incident in which the victim allegedly committed an act of aggression. We disagree.

To preserve a challenge to the exclusion of evidence, a party must make an offer of proof, unless the substance of the evidence was apparent from the context within which questions were asked. MRE 103(a)(2); *People v Grant*, 445 Mich 535, 545; 520 NW2d 123 (1994). This issue is unpreserved because Gray never appeared in court, no offer of proof was made, and the substance of the evidence was not apparent from the context within which questions were asked. Also, the trial court did not definitively rule on whether Gray could testify on this matter. Rather, when defense counsel raised the issue of Gray testifying for the first time on the fourth day of trial, the trial court stated, "Well, she can come, but we'll see when she gets here and I'll make a final ruling, if she shows up." After further discussion, defense counsel said he would make an offer of proof after Gray appeared in court. The trial court responded, "we'll have to have an offer of proof" before the court could make an "informed decision." Defense counsel said that "[w]hen Miss Gray gets here, I'll let madam prosecutor know." The trial court said, "That's a good idea." Later that day, defense counsel stated that his paralegal had attempted unsuccessfully to locate and serve a subpoena on Gray earlier that day. Defense counsel also had called and left messages for Gray but received no response. Defense counsel concluded, "[s]o I cannot get her here, but I just wanted the record to reflect what efforts I made to try and get her here."

"As a general rule, an appellate court will not decide moot issues. A case is moot when it presents only abstract questions of law that do not rest upon existing facts or rights. An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief." *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998) (citations omitted). This issue is moot because the trial court did not definitively rule on whether Gray could testify. Rather, the court stated it would make a decision after Gray appeared in court and an offer of proof was made. Due to the fact that Gray never appeared in court, and there was no offer of proof, the trial court never issued a ruling. In the absence of an offer of proof and an actual decision, it is speculative to assert that the trial court would not have allowed Gray to testify or that such a decision would have comprised error. Defendant's argument is premised on an abstract proposition, given that Gray never appeared and no ruling was made.

In addition, although defense counsel did not explicitly say he was withdrawing his request to have Gray testify, that is the clear implication of his statement that he was unable to

obtain Gray's presence in court and that he wanted the record to reflect his efforts to do so.[3] By effectively withdrawing the request to have Gray testify, defense counsel waived this argument. Waiver is the intentional relinquishment or abandonment of a known right, and a waiver extinguishes any error, thereby precluding appellate review of a claimed violation of that right. *People v Vaughn*, 491 Mich 642, 663; 821 NW2d 288 (2012); see also *People v Green*, 228 Mich App 684, 691; 580 NW2d 444 (1998) ("A defendant should not be allowed to assign error on appeal to something his own counsel deemed proper at trial. To do so would allow a defendant to harbor error as an appellate parachute.") (citation omitted).

In any event, assuming that the issue is merely unpreserved and not waived, defendant cannot demonstrate an error, let alone a clear or obvious error affecting her substantial rights, given that the trial court did not rule on the issue and thus did not commit an error. See *Carines*, 460 Mich at 763 (under the plain-error standard for unpreserved claims of error, a defendant must show that that a clear or obvious error affected the outcome of the proceedings); *People v Jones*, 44 Mich App 633, 638; 205 NW2d 611 (1973) ("Where the trial judge's discretion has not been invoked, there can be no abuse of that discretion and consequently no error."). Even if a clear or obvious error occurred with respect to this issue, defendant could not demonstrate that the error affected the outcome of the lower court proceedings given the overwhelming evidence that defendant was guilty of the offenses of which she was convicted, as set forth earlier, and given that another defense witness testified on the same general subject as Gray's purported testimony.

## IV. CONSTITUTIONAL VIOLATION

Defendant finally argues that a Sixth Amendment violation occurred at sentencing, as the trial court used judicial fact-finding to score offense variables (OVs) 3 and 16, which changed defendant's minimum sentence guidelines range. We disagree.

To preserve an argument that a Sixth Amendment violation occurred due to judicial fact-finding in the scoring of OVs, a defendant must raise an objection on that ground at sentencing. *People v Steanhouse*, 313 Mich App 1, 42; ___ NW2d ___ (2015), lv gtd ___ Mich ___ (2016). Although defendant objected to the scoring of OVs 3 and 16 at sentencing, she did not object on the ground of a Sixth Amendment violation. Therefore, the issue is unpreserved.[4] "A Sixth Amendment challenge presents a question of constitutional law that this Court reviews de novo." *People v Lockridge*, 498 Mich 358, 373; 870 NW2d 502 (2015). Unpreserved constitutional issues are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.

---

[3] Defendant did not argue below or on appeal that the prosecutor or the trial court should have assisted defense counsel in the efforts to locate or contact Gray, and, as discussed, defense counsel did not raise before the trial court the issue of Gray testifying until the fourth day of trial.

[4] The prosecutor's appellate brief addresses this issue as both a traditional OV scoring challenge and a Sixth Amendment claim, but defendant's appellate brief does not raise a traditional scoring challenge. Our analysis is therefore confined to defendant's Sixth Amendment claim.

In *Lockridge*, our Supreme Court held that Michigan's sentencing guidelines are constitutionally deficient under the Sixth Amendment to the extent that "the guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range, i.e. the 'mandatory minimum' sentence under *Alleyne* [*v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013)]." *Lockridge*, 498 Mich at 364. As a remedy for this constitutional violation, our Supreme Court "sever[ed] MCL 769.34(2) to the extent that it makes the sentencing guidelines range as scored on the basis of facts beyond those admitted by the defendant or found by the jury beyond a reasonable doubt mandatory." *Id*. The Court also struck "down the requirement in MCL 769.34(3) that a sentencing court that departs from the applicable guidelines range must articulate a substantial and compelling reason for that departure." *Id*. at 364-65. The Court held "that a guidelines minimum sentence range calculated in violation of *Apprendi* [*v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000),] and *Alleyne* is advisory only and that sentences that depart from that threshold are to be reviewed by appellate courts for reasonableness." *Id*. at 365. Courts must continue to determine the applicable guidelines range and take it into account at sentencing. *Id*.

For cases held in abeyance for *Lockridge*, virtually all of which involved challenges that were not preserved in the trial court, our Supreme Court held that when facts admitted by the defendant and facts found by the jury were sufficient to assess the minimum number of OV points needed for the defendant's score to fall within the cell of the sentencing grid under which she was sentenced, then the defendant has suffered no prejudice from any error, no plain error has occurred, and no further inquiry is warranted. *Id*. at 394-95. However, a defendant's Sixth Amendment right is impaired if the "facts admitted by a defendant or found by the jury verdict were *insufficient* to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced." *Id*. at 395.

> All defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure can establish a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry.

> In cases in which a defendant's minimum sentence was established by application of the sentencing guidelines in a manner that violated the Sixth Amendment, the case should be remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error.

*Id*. at 395, 397. Such remands are warranted only in cases in which the defendant was sentenced on or before July 29, 2015, the date of the *Lockridge* decision. *Id*.[5]

---

[5] For defendants sentenced after the *Lockridge* decision, traditional plain-error review will apply. *Lockridge*, 498 Mich at 397. In the present case, defendant was sentenced for the convictions at issue before the date of the *Lockridge* decision.

Defendant seeks relief under *Lockridge* on the basis of purported judicial fact-finding in the scoring of OVs 3 and 16. As explained below, there was no judicial fact-finding in the scoring of OV 3, as defendant herself admitted the facts necessary to assess 100 points for OV 3. Although judicial fact-finding occurred in the assessment of 1 point for OV 16, defendant suffered no prejudice, and no further inquiry is required, because facts admitted by defendant were sufficient to assess the minimum number of OV points necessary for her score to fall in the cell of the sentencing grid under which she was sentenced. *Id*. at 394-395.

## A. OFFENSE VARIABLE 3

OV 3 addresses physical injury to a victim. MCL 777.33(1); *People v Laidler*, 491 Mich 339, 343; 817 NW2d 517 (2012). A trial court must assess 100 points under OV 3 "if death results from the commission of a crime and homicide is not the sentencing offense." MCL 777.33(2)(b); *Laidler*, 491 Mich at 343. For the purpose of OV 3, a victim includes any person harmed by the defendant's criminal actions. *Id*. at 349 n 6. A victim is not limited to the victim of the charged offense. *People v Albers*, 258 Mich App 578, 593; 672 NW2d 336 (2003). To assess points under OV 3, factual causation is required in that the victim would not have died but for the defendant's criminal conduct. *Laidler*, 491 Mich at 345. However, the defendant's actions need not constitute the only cause of the death. *Id*. at 346.

In this case, homicide was not the sentencing offense. Moreover, defendant admitted that she possessed a firearm and fired the shot that killed Wright. Defendant thus admitted facts establishing factual causation. If defendant had not illegally possessed a firearm, she would not have been able to shoot and kill Wright. Hence, Wright was killed as a result of defendant's commission of the sentencing offenses. The facts admitted by defendant were sufficient to assess 100 points for OV 3. Given defendant's admission, it is irrelevant that the jury did not find the facts needed to score this OV.

## B. OFFENSE VARIABLE 16

As the prosecutor concedes, defendant is correct that the assessment of 1 point for OV 16 was based on judicial fact-finding. OV 16 addresses property obtained, damaged, lost or destroyed. MCL 777.46(1). An assessment of 1 point is required if the damaged property had a value of $200 or more, but not more than $1,000. MCL 777.46(1)(d). Defendant did not admit that she caused the damage to the vehicle in the parking lot that was hit by a bullet, nor did the jury find that defendant caused the damage. None of the offenses of which defendant was convicted contains an element concerning the facts needed to score this OV.

Nonetheless, the facts admitted by defendant were sufficient to assess the minimum number of OV points necessary for defendant's score to fall in the cell of the sentencing grid under which she was sentenced. Subtracting from defendant's total OV score of 136 points the 1 point assessed for OV 16 reduces defendant's total OV score to 135 points. With this adjustment, defendant's OV level remains at VI, leaving her in the sentencing cell of D-VI on the Class E grid. The 100-point assessment for OV 3 is by itself sufficient for defendant's score to remain in the same cell. Defendant's guidelines range remains unchanged at 19 to 57 months as a third habitual offender. See MCL 777.66; MCL 777.21(3)(b). Because facts admitted by defendant were sufficient to assess the minimum number of OV points necessary for defendant's

score to fall in the cell of the sentencing grid under which she was sentenced, defendant has suffered no prejudice, no plain error occurred, and no further inquiry is required. *Lockridge*, 498 Mich at 394-395.[6]

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly
/s/ Amy Ronayne Krause

---

[6] Because defendant did not preserve the *Lockridge* issue, this case does not fall within the ambit of *People v Terrell*, 312 Mich App 450, 464-467; ___ NW2d ___ (2015), held in abeyance 878 NW2d 480 (2016), in which this Court held that the remand procedure described in *Lockridge* was required for a *preserved* error resulting from the compulsory use of the guidelines even though judicial fact-finding in *Terrell* did *not* increase the defendant's minimum guidelines range. As discussed above, our Supreme Court's decision in *Lockridge* supports the conclusion that, with respect to unpreserved errors, where facts admitted by the defendant and facts found by the jury are sufficient to assess the minimum number of OV points needed for the defendant's score to fall within the cell of the sentencing grid under which she was sentenced, there is no prejudice or plain error and no further inquiry is required. See *Lockridge*, 498 Mich at 394-395. Moreover, even if *Terrell* may be applied to unpreserved errors, defendant fails to argue that she is entitled to relief on the ground that she was prejudiced by an error resulting from the compulsory use of the guidelines even if judicial fact-finding did not increase her minimum guidelines range. Instead, defendant argues that judicial fact-finding increased her guidelines range and that she is therefore entitled to relief under *Lockridge*. That argument lacks merit for the reasons discussed above. It is also notable that defendant's minimum sentence of 57 months is at the very upper end of the guidelines range, and, therefore, no basis exists to conclude that any error resulting from the trial court's compulsory use of the guidelines prejudiced defendant by preventing the trial court from making a downward departure from the guidelines range.